Opinion issued January 11, 2007










 



 





In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00665-CV






ROBERT MCKOWEN, M.D., Appellant


V.


MITCHELL RAGSTON, SR. AND MITCHELL RAGSTON, JR.,
INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVES OF THE
ESTATE OF GOLDEN RAGSTON, DECEASED, Appellees






On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2005-81398






O P I N I O N


 Appellant, Robert McKowen, M.D., files this interlocutory appeal from the trial
court's denial of his motion to dismiss a medical malpractice lawsuit brought by 
appellees, Mitchell Ragston, Sr., and Mitchell Ragston, Jr., in their individual
capacities and on behalf of the estate of Golden Ragston, deceased. (1) In two issues,
appellant contends that the trial court erred (1) by overruling his objections to the
qualifications of appellees' expert witness and (2) by denying his motion to dismiss
appellees' claim for failure to file a sufficient expert report, as required by section
74.351 of the Texas Civil Practice and Remedies Code. (2)

 We affirm. 

Background

 Golden Ragston was a 74-year-old woman in the end stages of renal disease. 
On March 27, 2003, Ragston saw appellant, a cardiothoracic surgeon, concerning
placement of a permanent arteriovenous access graft ("AV graft") for hemodialysis. 
On June 6, 2003, Ragston was admitted to West Houston Medical Center ("WHMC")
for acute dialysis treatment. On June 9, 2003, appellant placed the AV graft in
Ragston's arm. 

 Following surgery, Ragston suffered complications with healing, including
swelling, tenderness, and necrosis. Appellant prescribed antibiotics and discharged
Ragston to Triumph Hospital of Southwest Houston ("Triumph"). Ragston was not
under appellant's care at Triumph.

 On July 2, 2003, appellant readmitted Ragston to WHMC to address increased
swelling in Ragston's arm. The AV graft was identified as the source of the infection,
and appellant prescribed an additional course of antibiotics. On July 31, 2003,
appellant again admitted Ragston to WHMC and surgically removed a seroma from
her arm. On August 14, 2003, appellant replaced Ragston's Quinton catheter at
WHMC.

 On September 6, 2003, Ragston was admitted to Memorial Hermann Southwest
Hospital. Blood cultures indicated that Ragston was infected with vancomycin-resistant enterococci ("VRE"). After an infectious disease consultation, it was
recommended that the AV graft be removed. On September 15, 2003, appellant
removed a portion of the graft, leaving a cuff of foreign material in place in Ragston's
arm. On September 16, 2003, Ragston was transferred back to Triumph. On October
17, 2003, Ragston died from sepsis.


 Appellees brought medical malpractice claims against appellant in their
individual capacities (under the Wrongful Death Statute (3)) and on behalf of Ragston's
estate (under the Survival Statute (4)), alleging that appellant was negligent in failing
to provide proper and ordinary care to Ragston, "failing to properly administer to the
graft site," and "failing to properly monitor [Ragston] after diagnosis of infection." (5) 
To support their claims, appellees filed the expert report of Carl M. Berkowitz, M.D.,
as required by section 74.351 of the Texas Civil Practice and Remedies Code. See
id. 

 In his curriculum vitae, Dr. Berkowitz listed that he is a graduate of the
University of Massachusetts medical school, he has been licensed to practice since
1986, has been engaged in the full-time practice of medicine in the area of infectious
diseases since 1988, and is certified by the American Board of Internal Medicine,
with a subspecialty in infectious diseases. In addition, Dr. Berkowitz has been a
partner in Infectious Disease Consultants of San Antonio since 1993; has been the
medical director of Infectious Diseases Consultants Infusion Center of San Antonio
since 1997; has served as Chief of Staff at Southwest Texas Medical Hospital; and
has served as Chairman of the Quality Improvement Committee of the Methodist
Healthcare System. Further, Dr. Berkowitz has authored published works on
infectious diseases. 

 In his affidavit, Dr. Berkowitz attested as follows: "I have treated many patients
with the type of infection suffered by Ms. Golden Ragston, specifically, infections of
arteriovenous access grafts. In addition, I have cared for many infections caused by
Vancomycin Resistant Enterococci (VRE). As such, I am aware of the standards of
care that exist related to these infections." Dr. Berkowitz articulated the applicable
standard of care to be as follows: 

 When inserting an intravascular foreign body, the consequences of
infection are extremely serious. Thus, it is incumbent upon the surgeon
to make every attempt to make sure there is no infection at the time of
surgery. This includes a review of symptoms, temperature, laboratory,
and a thorough physical examination. Any suggestion of an infection
should result in postponing the procedure. It was apparent shortly after
the insertion of the AV graft that an infection was present. It is
generally accepted that an infected foreign body can not be treated with
antibiotics in order to achieve cure. The only way to eradicate an
infected foreign body is to remove it. This needs to be done timely and
completely. If timeliness is not achieved, bacteremia will result. If the
entire device is not removed, a nidus of infection will remain, allowing
the infection to persist. . . . In the setting of persistent bacteremia, an
aggressive search for a removable source of infection must be made, and
any potential source must be removed.


 Dr. Berkowitz attested that appellant breached this standard of care as follows,
in pertinent part:

 [T]here was evidence suggestive of infection at the time the device was
placed. Unless there was an emergent need for the AV graft, she should
not have had it placed until she was afebrile, and had no evidence of
infection while not receiving antibiotics. Once it was apparent that the
graft was continuing to show evidence of infection each time antibiotics
were stopped, the device should have been removed. It should have
been removed in its entirety at the time of surgery on 9/15/03. When it
became apparent that Ms. Ragston was still bacteremic despite the
partial removal, the remainder of the graft should have immediately been
removed. The failure to remove the graft at that time was a violation of
the standard of care.


 Dr. Berkowitz attested to causation, as follows:

 

 Ms. Golden Ragston underwent the placement of an AV graft at [a] time
when she showed evidence of a systemic infection. Through this, or
some other mechanism, her graft became infected. The failure to
appropriately treat this infection led to the development of intractable
bacteremia with a progressively more resistant organism. This caused
the demise of Ms. Ragston. Had a peritoneal catheter been placed,
instead of the AV graft, or had the AV graft been removed in a timely
and appropriate manner, it is my opinion that she would not have
developed the infection that caused her demise. The continuing course
of treatment by Dr. McKowen violated the standard of care and caused
the death of Ms. Ragston. Appellant objected that the report was deficient on the ground that Dr.
Berkowitz, an infectious disease specialist, was not qualified to serve as an expert
against appellant, a cardiothoracic surgeon. Appellant moved to dismiss the suit
pursuant to section 74.351. See id. The trial court overruled appellant's objections
and denied the motion to dismiss. This appeal followed.

Dr. Berkowitz as a Qualified Expert

 In his first issue, appellant contends that the trial court erred by overruling his
objections to Dr. Berkowitz's qualifications as an expert.


A. Standard of Review

 We review a trial court's determination as to the qualification of a witness as
an expert for an abuse of discretion. Larson v. Downing, 197 S.W.3d 303, 304-05
(Tex. 2006) (citing Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996)); Strom v.
Mem'l Hermann Hosp. Sys., 110 S.W.3d 216, 220 (Tex. App.--Houston [1st Dist.]
2003, pet. denied). A trial court abuses its discretion if it acts arbitrarily,
unreasonably, or without reference to guiding rules or principles. See Lookshin v.
Feldman, 127 S.W.3d 100, 103 (Tex. App.--Houston [1st Dist.] 2003, pet. denied). 
We do not disturb the trial court's discretion absent clear abuse. Larson, 197 S.W.3d
at 304 (citing Broders, 924 S.W.2d at 151).

B. Qualifications of an Expert

 In determining the qualifications of an expert in a medical malpractice claim,
we look to the Texas Civil Practice and Remedies Code, and to interpretive case law. 

 Pursuant to section 74 of the Civil Practice and Remedies Code, within 120
days of filing a health care liability claim, the plaintiff must serve on each party one
or more expert reports, with a curriculum vitae, for each physician against whom a
liability claim is asserted. (6) An "expert report" is a written report by an expert that
provides a fair summary of the expert's opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the physician
failed to meet the standards, and the causal relationship between that failure and the
harm claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). With respect to
a person giving opinion testimony regarding whether a physician departed from
accepted standards of medical care, an "expert" is a person qualified to testify under
the requirements of section 74.401. Id. § 74.351(r)(5). 

 Pursuant to section 74.401, a person may qualify as an expert witness on the
issue of whether the physician departed from standards of medical care only if the
person is a physician who (1) is practicing medicine at the time such testimony is
given or was practicing medicine at the time the claim arose; (2) has knowledge of
accepted standards of medical care for the diagnosis, cure, or treatment of the illness,
injury, or condition involved in the claim; and (3) is qualified on the basis of training
or experience to offer an expert opinion regarding those accepted standards of
medical care. Id. § 74.401(a). "In determining whether a witness is qualified to
testify on the basis of training or experience, the court shall consider whether, at the
time the claim arose or at the time the testimony is given, the witness: (1) is board
certified or has other substantial training or experience in an area or medical practice
relevant to the claim, and (2) is actively participating in rendering medical care
relevant to the claim. Id. § 74.401(c). 


 Once an expert report is timely served, the defendant physician must timely 
file and serve any objections to the sufficiency of the report. Id. § 74.401(e). If the
plaintiff does not timely serve an expert report, the trial court must, on the motion of
the affected physician, enter an order dismissing the claim with prejudice, subject to
section 74.351(c). Id. § 74.351(b). Pursuant to 74.351(c), if a report is deemed not
to have been timely served because elements of the report are found to be deficient,
"the court may grant one 30-day extension to the claimant to cure the deficiency." 
Id. § 74.351(c).

C. Dr. Berkowitz

 The parties do not dispute that appellees timely served the report of their
expert, Dr. Berkowitz. Appellant contends that Dr. Berkowitz is not a qualified
expert and thus a report by Dr. Berkowitz is insufficient to satisfy appellees' burden
to provide an expert report. 

 Applying section 74.401, Dr. Berkowitz is qualified to serve as an expert on
the issue of whether appellant departed from standards of medical care only if Dr.
Berkowitz is a physician who (1) was practicing medicine at the time such testimony
is given or was practicing medicine at the time the claim arose; (2) has knowledge of
accepted standards of medical care for the diagnosis, cure, or treatment of the illness,
injury, or condition involved in the claim; and (3) is qualified on the basis of training
or experience to offer an expert opinion regarding those accepted standards of
medical care. Id. § 74.401(a). 

 Here, the parties do not dispute that Dr. Berkowitz is a physician who was
practicing medicine during the requisite periods. See id. § 74.401(a)(1). We consider
whether, pursuant to section 74.401(a)(2), Dr. Berkowitz demonstrates that he "has
knowledge" of accepted standards of medical care for the diagnosis, cure, or
treatment of the illness, injury, or condition involved in the claim. See id.
§ 74.401(a)(2). Specifically, appellees' claims are that appellant was negligent in
failing to provide proper and ordinary care to Ragston, "failing to properly administer
to the graft site," and "failing to properly monitor [Ragston] after diagnosis of
infection." Appellees state that the condition involved in their claim is an infection
and that it does not involve appellant's negligence, if any, in performing the surgery. 

 In his affidavit, Berkowitz stated that he has engaged in the full-time practice
of medicine in the area of infectious diseases since 1988 and that he is a board
certified specialist in infectious diseases. Dr. Berkowitz's curriculum vitae shows
that he has been a partner in Infectious Disease Consultants since 1993 and has been
the medical director of Infections Diseases Consultants Infusion Center since 1997. 
In his affidavit, Dr. Berkowitz attested as follows: "I have treated many patients with
the type of infection suffered by Ms. Golden Ragston, specifically, infections of
arteriovenous access grafts. In addition, I have cared for many infections caused by 

Vancomycin Resistant Enterococci (VRE). As such, I am aware of the standards of
care that exist related to these infections." Dr. Berkowitz stated that the standard of
care in managing infective processes in the context of intravascular foreign bodies is
that an infected foreign body cannot be treated with antibiotics but must be timely and
completely removed. We conclude that these statements indicate "knowledge" of
accepted standards of medical care for the diagnosis, cure, or treatment of the
infection involved in appellees' claim. See id. § 74.401(a)(2). 

 Appellant contends that Dr. Berkowitz's statement that he has "treated many
patients with the type of infection suffered by Ms. Golden Ragston, specifically,
infections of [AV grafts]" is insufficient to demonstrate that he is knowledgeable
about the standard of care applicable to thoracic surgeons. We conclude that section
74.351 does not require that Dr. Berkowitz be able to articulate the standard of care
applicable to a specialty other than his own. See Blan v. Ali, 7 S.W.3d 741, 746-47
& n.3 (Tex. App.--Houston [14th Dist.] 1999, no pet.). The statute does not focus
on the defendant doctor's area of expertise, but on the condition involved in the
claim. See id. § 74.401.

 Further at issue is whether Dr. Berkowitz is qualified on the basis of training
or experience to offer an expert opinion regarding the accepted standard of medical
care. See § 74.401(a)(3). The test to determine whether a witness is qualified to
testify on the basis of training or experience is whether, at the time the claim arose or
at the time the testimony is given, the witness (1) is board certified or has other
substantial training or experience in an area or medical practice relevant to the claim
and (2) is actively participating in rendering medical care relevant to the claim. Id.
§ 74.401(c).

 Dr. Berkowitz is a board certified specialist in infectious diseases and has
indicated that he has training and experience, as well as active participation in
rendering medical care, in the area relevant to the claim. Specifically, appellees'
claim that appellant was negligent in failing to provide proper and ordinary care to
Ragston, "failing to properly administer to the graft site," and "failing to properly
monitor [Ragston] after diagnosis of infection." 

 Appellant contends that Dr. Berkowitz must be qualified to offer an expert
opinion on the accepted standard of care for a cardiothoracic surgeon administering
to a graft site and monitoring a patient. Appellant contends that appellees' claim
relates to the graft itself and not to the infection and that Dr. Berkowitz focuses his
report on surgical decisions. Appellant contends that Dr. Berkowitz testifies "about
surgical placement and removal of an AV-graft. . . . the decision to place the graft and
on the decision to remove the graft, but leave a cuff in Ms. Ragston's arm." 
Specifically, appellant points to the following emphasized language in Dr.
Berkowitz's statement of the applicable standard of care: 

 When inserting an intravascular foreign body, the consequences of
infection are extremely serious. Thus, it is incumbent upon the surgeon
to make every attempt to make sure there is no infection at the time of
surgery. . . . It was apparent shortly after the insertion of the AV graft
that an infection was present. It is generally accepted that an infected
foreign body can not be treated with antibiotics in order to achieve cure. 
The only way to eradicate an infected foreign body is to remove it. This
needs to be done timely and completely. . . . 


Appellant contends that this language demonstrates that Dr. Berkowitz is focusing on
the surgeon's role in pre-operative assessment of the patient and the removal of the
entire foreign body when infection is suspected.

 Specifically, appellant points to the following emphasized language in Dr.
Berkowitz's statement of the breach of the standard of care: 

 Once it was apparent that the graft was continuing to show evidence of
infection each time antibiotics were stopped, the device should have
been removed. It should have been removed in its entirety at the time
of surgery on 9/15/03. When it became apparent that Ms. Ragston was
still bacteremic despite the partial removal, the remainder of the graft
should have immediately been removed. Appellant contends that Dr. Berkowitz is not discussing treatment of an infection, but
removal of the graft. In addition, contends appellant, Dr. Berkowitz is discussing the
technique--complete as opposed to partial removal.

 Appellant concedes that Dr. Berkowitz is qualified to address causation as to
appellant. Appellant's complaint is that appellees' expert is not qualified to testify
as to the applicable standard of care and any breach of that standard. To support his
contentions, appellant cites Broders v. Heise, 924 S.W.2d 148, 149 (Tex. 1996). 

 

 In Broders, a patient died from injuries that were untimely diagnosed and
treated. Id. at 150. The Supreme Court of Texas held that the plaintiffs' expert
witness, an emergency room physician trained in treating brain injuries and with
experience in treating head injuries, was not qualified to testify as to causation. Id.
at 153. There, as appellant contends, the court concluded that not every doctor is
qualified to testify in every case simply by virtue of having a medical degree. Id. at
152. The court held that a plaintiff must show more, he must show that the expert has
"knowledge, skill, experience, training, or education" regarding the specific issue
before the court which would qualify the expert to give an opinion on that particular
subject. Id. at 153-54 (applying Texas Rule of Evidence 702 (7)). There, the court
concluded that the plaintiff's expert was not qualified to offer an expert opinion
because he offered only speculative testimony. Id. at 153. The court clarified that
"[t]he focus . . . is on the 'fit' between the subject matter at issue and the expert's
familiarity therewith, and not on a comparison of the expert's title or specialty with
that of the defendant." Id. at 153 (quoting Nunley v. Kloehn, 888 F.Supp. 1483, 1488
(E.D. Wis. 1995)).

 Appellant contends that "Texas cases interpreting Broders show that Dr.
Berkowitz is unqualified to render an opinion about the management of arteriovenous
grafts." Appellant cites In re Windisch, for the proposition that an expert report is
deficient if it contains only conclusory statements as to the extent of the expert's
training. 138 S.W.3d 507, 513 (Tex. App.--Amarillo 2004, orig. proceeding). 
However, appellant does not specifically argue that Dr. Berkowitz's statements are
conclusory; rather, we construe appellant's argument to be that Dr. Berkowitz does
not state that he has any experience in placing, monitoring, or removing AV grafts. 

 In addition, appellant cites Forrest v. Danielson, 77 S.W.3d 842 (Tex.
App.--Tyler 2002, no pet.). There, the plaintiff sued her orthopedic surgeons based
on the specific surgical procedures that they employed in the installation of a pedicle
screw and rod system in her back. Id. at 844. The plaintiff's expert was deemed
unqualified because he did not indicate any familiarity with the pedicle screw and rod
technique used in the plaintiff's surgery. Id. at 848. Forrest is readily
distinguishable from the instant case because, here, appellees have emphasized that
their case "does not involve appellant's negligence, if any, [in] performing the
surgery."

 Further, appellant cites Tomasi v. Liao, 63 S.W.3d 62 (Tex. App.--San
Antonio 2001, no pet.). In Tomasi, the plaintiff's expert, a psychiatrist, was deemed
unqualified to render an expert report against a neurosurgeon because the psychiatrist
did not show that he had relevant experience with post-operative care of patients
following neurosurgery. Id. at 66. Here, Dr. Berkowitz has stated in his expert
report that he has relevant experience--treatment of post-operative infections
following AV grafts.

 Finally, appellant cites Richburg v. Wolfe, 48 S.W.3d 375 (Tex.
App.--Eastland 2001, pet. denied). There, again, the issue was the surgical technique
employed by the defendant surgeon. Id. at 376. Here, appellees do not challenge the
particular surgical technique employed by appellant. 

 The cases appellant cites do not support his contention that Dr. Berkowitz is
unqualified to render an expert report on the management of Ragston's post-operative
infection. Dr. Berkowitz was not required to have "experience in actually performing
the surgical procedure to insert or extricate the graft," as appellant contends, because
appellees have not made any claims with regard to the surgical procedure itself. It is
sufficient that Dr. Berkowitz demonstrated experience with monitoring infections in
patients after the placement of an AV graft. The plain language of section 74.401
focuses on the condition involved in the claim, not the defendant doctor's area of
practice. See Tex. Civ. Prac. & Rem. Code Ann. § 74.401. Dr. Berkowitz is
qualified to testify in an area, as here, in which Dr. Berkowitz has knowledge, skill,
training, and experience, and where the subject of the claim (here, an infection from
an AV graft) falls squarely within his medical expertise.

 To the degree appellant's argument could be construed as an argument that Dr.
Berkowitz is testifying about surgical matters, Dr. Berkowitz is not required to be a
specialist in the particular area of practice for which the testimony is offered and he
is not required to articulate the standard of care applicable to a specialty other than
his own. See Keo v. Vu, 76 S.W.3d 725, 732 (Tex. App.--Houston [1st Dist.] 2002,
pet. denied); Blan, 7 S.W.3d at 745. A medical witness from one practice area may
be qualified to testify if he has practical knowledge of what is customarily done by
other practitioners under circumstances similar to those at issue in the case. See Keo,
76 S.W.3d at 732. If the subject matter is common to and equally recognized and
developed in all fields of practice, any physician familiar with the subject may testify
as to the standard of care. See Keo, 76 S.W.3d at 732; Blan, 7 S.W.3d at 745 (noting
that "[t]he Texas Supreme Court has made it clear that if a subject of inquiry is
substantially developed in more than one field, a qualified expert in any of those
fields may testify") (citing Broders, 924 S.W.2d at 152); Garza v. Keillor, 623
S.W.2d 669, 671 (Tex. Civ. App.--Houston [14th Dist.] 1981, writ ref'd n.r.e.)
(holding that, in suit against orthopedic surgeon, an internist was qualified as an
expert concerning post-operative infection). 

 In Roberts v. Williamson, the Supreme Court of Texas held that a board
certified pediatrician was qualified to render an expert opinion as to a child's
neurological injuries. 111 S.W.3d 113, 122 (Tex. 2003). There, parents sued a
pediatrician, two on-call physicians, and a hospital after their baby suffered brain
damage from a malfunctioning ventilator and an alleged failure to properly treat and
then transfer the child to a better-equipped hospital. Id. at 115. The physicians
contended that the parents' expert, a board-certified pediatrician, Dr. McGehee, was
not qualified to testify as to the nature and extent of the child's neurological injuries. 
Id. at 121. The court held that the trial court did not err in admitting McGehee's
testimony because, although he was not a neurologist, the record reflected that
McGehee had experience and expertise regarding the specific causes and effects of
the injuries at issue. Id. at 121-22. McGehee was a board-certified pediatrician who
held certifications in pediatric advanced life-support and advanced trauma life-support, he had studied the effects of pediatric neurological injuries, and had
extensive experience advising parents about the effects of such injuries. Id.

 In Keo, we examined facts similar to those in the instant case. See 76 S.W.3d
729. There, patient Keo sued a cosmetic surgeon, Dr. Vu, after a facial prosthetic he
implanted in her nose had moved. Id. There, as in the instant case, Keo had an active
infection at the time of a surgery Dr. Vu performed to correct the issue. Id. There,
as here, post-operatively, the infection worsened. Id. In Keo, as here, Keo underwent
a subsequent surgery to remove the prosthetic. Id. Keo sued Dr. Vu for negligence
and provided an expert report from an otolaryngologist, Dr. Card, who did not
routinely perform rhinoplasties or other cosmetic surgeries. Id. at 733. 

 We held that, although Dr. Card did not perform cosmetic surgeries, this fact
did not render him unqualified to assert an opinion regarding issues common to all
surgeries, including the adequacy of preoperative counseling and post-operative
infections. Id. There, unlike here, the expert did perform other surgeries on the head
and neck, and we stated that this fact rendered Dr. Card especially qualified to give
an opinion as to the standard of care for surgery. Id. We held that the trial court
abused its discretion by excluding the report of Dr. Card on the basis that he was
unqualified because "there was proof that Dr. Card had expertise and actual
experience regarding the specific issues of the standard of care for head and neck
surgeries and the standard of care for surgeries in general." Id. We pointed out that
had Keo's complaints gone to issues unique to cosmetic surgery, "our opinion might
have a different result." Id. at 733 n.3.

 In Blan, the Fourteenth Court of Appeals held that a neurologist was qualified
to testify as to whether a cardiologist and an emergency room physician breached the
standard of care with regard to treating a stroke. 7 S.W.3d at 747. There, a family
sued a cardiologist and an emergency room physician, alleging that they were
negligent in treating a patient who had suffered a stroke. Id. at 743. The plaintiffs'
expert, Dr. Reisbord, a board-certified neurologist, set out in his affidavit that he had
training and experience in the care, diagnosis, and treatment of strokes. Id. The
defendant physicians contended that Reisbord was unqualified because he did not
know the standard of care as applied to cardiologists and emergency room physicians.
Id. at 733-34. According to Dr. Reisbord, the standards for treating a stroke applied
to any physician, regardless of his or her area of expertise. Id. at 747 n.3. The court
held that Reisbord was not precluded from giving an opinion that two doctors
breached the standard of care in the area in which Reisbord has knowledge, skill,
training, and experience, and where the subject of the claim fell squarely within his
medical expertise. Id. at 746-47.

 In Keeton v. Carrasco, the San Antonio court of appeals held that the plaintiff's
expert, who specialized in physical medicine, rehabilitation, and pain management
was not required to state the standard of care for an orthopedic surgeon and need not
have had any training in orthopedics to render an expert opinion on a post-operative
infection. 53 S.W.3d 13, 25-26 (Tex. App.--San Antonio 2001, pet. denied). There,
plaintiff Keeton became infected after an orthopedic surgeon, Dr. Carrasco, implanted
a foreign object into Keeton's back--a spinal cord stimulator. Id. at 17. Six months
later, Carrasco diagnosed a staph infection in Keeton's back and Keeton was forced
to undergo surgeries to amputate fingers because of the delay in the diagnosis and
treatment. Id. Keeton sued, relying on the report of his expert, Dr. Greenspan, whose
practice focused on physical medicine, rehabilitation, and pain management. Id. at
22. There, as here, the defendant physician argued that the expert was not qualified
to testify as to the standard of care for an orthopedic surgeon. Id. The court held that
Greenspan was not required to state the standard of care applicable to an orthopedic
surgeon or to show that he had orthopedic training or experience. Id. at 25-26. 
Greenspan attested that he was familiar with the standards applicable to post-operative care of patients who have had spinal cord stimulators implanted, that his
practice included post-operative care of patients after implantation of spinal cord
stimulators, that such patients must be watched for signs of infection, and that any 

infection must be treated aggressively. Id. at 22. Greenspan stated that "the duty to
recognize and aggressively treat post-operative infections is not peculiar to any
specialty but is common to all physicians." Id. The court held that Greenspan was
qualified to testify as an expert. Id. at 26.

 In Tennyson v. Phillips, the Tyler court of appeals held that an infectious
disease expert was qualified to testify as to the standard of care applicable to a
cardiovascular surgeon, among others, regarding a post-operative infection. No. 12-02-00154-CV, 2004 WL 63158, at *8 (Tex. App.--Tyler 2004, pet. denied) (mem.
op.). There, a patient who had undergone coronary bypass surgery required an
emergency re-intubation and tracheostomy after surgery. Id. at *1. The tracheostomy
was performed by an otolaryngologist. Id. The re-intubation resulted in an infection,
a mediastinal abscess, and the patient's subsequent death. Id. at *1-2. During this
time, the patient was also being treated by a pulmonologist/critical-care specialist, a
heart surgeon, a nephrologist, and a cardiologist. Id. at *1. The patient's family sued
all of the physicians, alleging that each failed to diagnose the infection and monitor
the patient's condition and relying on the expert report of an infectious disease
specialist, Dr. Sarver. Id. at *2. Dr. Sarver attested that, without regard to the
individual specialty of each physician, each of them breached the standard of care by
failing to diagnose the infection and by prescribing inappropriate therapy. Id. at
*5-6. The defendants moved to strike the expert report on the ground that Dr. Sarver
failed to demonstrate his expertise on the standards applicable to a pulmonologist,
cardiologist, nephrologist, or otolaryngologist in the post-operative care and
treatment of a patient who was suffering from multiple co-morbid conditions and who
had developed an infection. Id. at *7. The trial court agreed, excluding Sarver's
expert report. Id. at *2. On appeal, the court held that Sarver was qualified to testify
as to the standard of care regarding the proper treatment of a mediastinal abscess. Id.
at *8. Although Sarver had never personally treated a patient who suffered a
mediastinal abscess following intubation nor had he treated a mediastinal infection
in a patient suffering from end-stage renal failure, Sarver had treated a patient with
a mediastinal abscess after a bypass surgery. Id. The court concluded that the
circumstances of this case dealt directly with the proper treatment of an infection--an
area in which Sarver is board certified. Id.

 Here, the circumstances of this case deal directly with the proper treatment of
an infection--an area in which Dr. Berkowitz is board certified. Appellant's
argument that Dr. Berkowitz is unqualified to give an expert opinion because he is
not a cardiothoracic surgeon and is not familiar with the standard of care applicable
to cardiothoracic surgeons would be persuasive if Dr. Berkowitz had proffered a
medical opinion in a matter peculiar to the field of cardiothoracic medicine. See Keo,
76 S.W.3d at 733 n.3. Dr. Berkowitz has not. Dr. Berkowitz's attests in his statement
of the standard of care that "[i]t is generally accepted that an infected foreign body
cannot be treated with antibiotics to achieve cure." (Emphasis added.) Dr. Berkowitz
summarizes his statement of the standard of care as follows: "[i]n the setting of
persistent bacteremia, an aggressive search for a removable source of infection must
be made, and any potential source must be removed." (Emphasis added). The trial
court could have reasonably construed Dr. Berkowitz's statements in his affidavit to
be that the standard of care in the context of systemic bacteremia required the
complete removal of any foreign body, regardless of the exact nature of the foreign
body. 

 Contrary to appellant's assertion that Dr. Berkowitz is giving an opinion as to
how appellant should have removed the graft, the trial court could have reasonably
concluded that Dr. Berkowitz's statement in his affidavit is limited to the assertion
that the foreign body needed to be totally removed. Dr. Berkowitz does not comment
on the specific surgical technique used to remove the AV graft, and appellees have
not asserted any claims regarding appellant's surgical technique. Moreover, as the
case law demonstrates, Dr. Berkowitz is not precluded from testifying in areas in
which he has knowledge, skill, training, and experience, and where the subject of the
claim falls squarely within his medical expertise. Broders, 924 S.W.2d at 154; Blan,
7 S.W.3d at 746-47.

 We cannot conclude that the trial court abused its discretion in overruling
appellant's objections to the qualifications of Dr. Berkowitz. See Larson, 197 S.W.3d
at 304 (emphasizing that "we do not disturb trial court's discretion absent clear
abuse"). We hold that the trial court did not abuse its discretion by overruling
appellant's objections to the report. (8)

 Accordingly, appellant's first issue is overruled.

Conclusion

 We affirm the judgment of the trial court.

 


 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Jennings, and Higley.

1. § 
 
§ - 
2. § 
 § - 
 
 
 
 
3. § - 
4. § 
5. 
 - 
6. § 
 § - 
 
7. 
 
 
 
8. 
' ' 
 '