In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00260-CV


____________________



RAMIN MOHEB AND RAMIN MOHEB d/b/a 


GREATER ORANGE WOMEN'S CENTER, Appellants



V.


 

ANDY FRED HARVEY, SR., INDIVIDUALLY AND AS PERSONAL


REPRESENTATIVE OF THE ESTATE OF ALBERTA LAVON HARVEY,


EVELYN BLOCK, JUDY ERWAY, EDWARD RUSSELL


HARVEY, SR., ALBERT LEON HARVEY, AND JAMES E. HARVEY,


 Appellees





On Appeal from the 163rd District Court


Orange County, Texas


Trial Cause No. B-070299-C






MEMORANDUM OPINION



 Plaintiffs-appellees Andy Fred Harvey, Sr., individually and as personal representative
of the estate of Alberta Lavon Harvey, deceased; and Evelyn Block, Judy Erway, Edward
Russell Harvey, Sr., Albert Leon Harvey and James E. Harvey, (1) sued defendants-appellants
Ramin Moheb, M.D. ("Moheb") and Ramin Moheb, M.D., P.A. d/b/a Greater Orange
Women's Center ("GOWC") and other defendants for alleged medical malpractice. 
Appellants filed objections to appellees' expert report and moved for dismissal. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(l) (Vernon Supp. 2008). Appellees filed a
supplemental report by the same expert. The trial court denied appellants' motion to dismiss. 
Appellants then filed this interlocutory appeal, in which they raise four issues for our
consideration. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008). We
affirm.

Background


 In their petition, appellees alleged that on or about June 22, 2005, the deceased,
Alberta Lavon Harvey, sought treatment from appellant Moheb at GOWC for "pain and
swelling in her left vulvar area." Appellees further asserted that Moheb took a culture of the
affected tissue, cauterized the area, and prescribed Augmentin. According to appellees,
Andy informed Moheb the next day that the area had worsened, and Moheb advised him to
take Alberta to the hospital. Appellees contended that Alberta was admitted that day to
Memorial Hermann Baptist Hospital in Orange by Dr. Marshall B. Packard, who started
treatment with the antibiotic Invanz, but Alberta did not significantly improve. Appellees
asserted that Alberta was transferred to Continue Care Hospital of Southeast Texas on June
26, 2005, and the culture Moheb had taken "was determined to show Methicillin Resistant
Staphylococcus Aureus (MRSA)." According to appellees' petition, Alberta's condition
continued to deteriorate, and on July 10, 2005, she was transferred to Memorial Hermann
Baptist Hospital-Orange "in shock with hypotension, acidosis, renal[,] and respiratory
failure." The petition further alleged as follows:

 Exploratory surgery was performed on July 12, 2005 for possibly peritonitis
and gangrenous bowel. She continued to worsen and was transferred to
Memorial Hermann Baptist Hospital-Beaumont on July 13, 2005 to begin
dialysis. On July 23, 2005, Mrs. Harvey's condition of Multiple Organ Failure
Syndrome and Adult Respiratory Distress Syndrome worsened. She declined
into a coma and died later that same day from [s]epsis and abdominal/pelvic
infection.

 

 The petition alleged that Moheb was negligent by improperly diagnosing Alberta with
cellulitis, failing to timely follow up on the culture he performed, failing to properly diagnose
Alberta's condition, failing to prescribe "sufficient proper antibiotics to combat the
infection[,]" and failing to control Alberta's infection. Appellees also contended in their
petition that appellants, "either individually, or through their agents, servants[,] or employees,
failed to exercise the care required by law in the medical care and treatment of Alberta Lavon
Harvey. The inappropriate care provided to Alberta Lavon Harvey was a proximate cause
of severe personal injuries to her and ultimately caused her death." Appellees filed an expert
report by Dr. Carl M. Berkowitz, a specialist in internal medicine and infectious diseases,
with their petition. Moheb and GOWC filed objections to Berkowitz's report, in which they
argued that: (1) Berkowitz was not qualified to offer an opinion as to liability and causation
as to each defendant; and (2) Berkowitz's report failed to meet the requirements of Chapter
74 and Palacios for the following reasons:

 it fails to identify the defendants by name; fails to identify duty, standard of
care, breach thereof, and causation as to each defendant; fails to provide a
factual basis for his opinions and link his conclusions to the facts of the case;
fails to inform each of the defendants with sufficient specificity of the
defendant's conduct the plaintiffs have called into question; fails to discuss the
elements of medical negligence as to each defendant with sufficient specificity
to provide the trial court with a basis to conclude that the claims have merit
against each defendant; and the opinions are speculative, conclusory, vague,
and assume facts.


 After receiving appellants' objections to the report, appellees filed a supplemental
report (2) by Berkowitz within the 120-day deadline provided by Chapter 74. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2008). Berkowitz's second report
alleged as follows, in pertinent part:

History



 At the time of the events in question Ms. Alberta Harvey was a 67 year old
woman with a history of diabetes mellitus, hypothyroidism, cerebral vascular
disease[,] and hypertension. On 6/22/05 she presented to the Greater Orange
Women's [C]enter complaining of a painful area of swelling in her left vulvar
area. She was seen by Dr. Ramin Moheb. She was felt by Dr. Moheb to have
an area suspicious for an abscess in the left labia majora. An attempt at
incision and drainage was performed, but no fluid was obtained. A culture of
the tissue was taken. The area was cauterized and Ms. Harvey was dismissed
on Augmentin. According to the laboratory report . . ., the culture report was
finalized as having MRSA on 6/26/05. I can not be certain as to when Dr.
Moheb became aware of the culture because, while the report was found in his
medical records, it was not initialed, nor is there any mention of it in his
records. Dr. Moheb dictated a report on 6/28/05 to [another physician] about
the evaluation [of] Ms. Harvey. It makes no mention of the labial culture or
the culture result.


 On 6/23/05 the patient's husband called stating that the area of cellulitis had
worsened. Laboratory data from the previous day revealed an elevated white
blood cell count (WBC) of 15.1. The patient was advised to go to the
emergency room to be seen by her internist.


 Ms. Harvey was admitted to Memorial Hermann Baptist Hospital on 6/23/05
by Dr. Marshall Packard. She was found to have a swollen tender
erythematous left labia. She had an elevated WBC of 17.2. She was given the
antibiotic Invanz intravenously. . . . Although Ms. Harvey showed a
normalization of her WBC, her labial process showed no significant
improvement. She continued to have considerable pain. On 6/26/05 she was
transferred to Continue Care [H]ospital of Southeast Texas for ongoing
antibiotic therapy with Invanz and wound care.


 At Continue Care the patient was continued on Invanz. The labial area
remained erythematous and tender. . . . On 6/28/0[5] Dr. Packard became
aware of the MRSA culture from the office of Dr. Moheb. The Invanz was
discontinued, and Vancomycin and Clindamycin were started. . . . On 6/30/05
the patient was confused. Her labial lesion was minimally improved. . . . On
7/5/0[5] the patient had 2 bowel movements. The nurses reported her to be
confused, short of breath[,] and trying to get out of bed. Her abdomen was
noted to be large and distended. . . . On 7/8/05 the patient was documented to
have complained of diarrhea. Her labial lesion was unchanged. The
Vancomycin and Clindamycin were discontinued, and the antibiotics Cubicin
and Fluconazole were started. A stool sample was sent for clostridium
difficile toxin and on 7/8/05 it was reported as being positive. . . . She was felt
to have sepsis and acute renal insufficiency. . . . A CT scan showed marked
mucosal thickening of the colon suggesting colitis.


 Ms. Harvey was admitted to Memorial Hermann Baptist Hospital-Orange on
7/10/05. She was continued on Cubicin and Fluconazole. She was in shock
with hypotension, acidosis, renal and respiratory failure. She was diagnosed
with the Multiple Organ Failure Syndrome (MOFS) caused by a severe
inflammatory colitis. . . . Intravenous Flagyl was added. . . . She was seen by 
[another physician] in surgical consultation. He felt that she had shock due to
left colon pathology. . . . [The other physician] felt the patient was more
stable, and that given signs suggesting peritonitis, and the possibility of
gangrenous bowel, surgical exploration of her abdomen should be performed.


 Ms. Harvey was taken to surgery on 7/12/05. She was found to have an acute
surgical abdomen with peritonitis and colonic exudates secondary to
transcolonic inflammation from severe colitis. . . .


 Post-operatively Ms. Harvey continued to do poorly. She was given
intravenous Vancomycin. Her acidosis worsened as did her blood pressure. 
She became oliguric and was felt to need dialysis. For these reasons she was
transferred to Memorial Hermann Baptist Hospital-Beaumont on 7/13/05.


 While at Memorial Hermann Baptist Hospital-Beaumont, Ms. Harvey was
treated aggressively. . . . By 7/17/0[5] she was felt to be hemodynamically
stable, but still in a septic state. On 7/17/0[5] she developed a fever, the
etiology of which was unclear. She was noted to begin making urine and
dialysis was discontinued. Her overall status was felt to be improved. . . .

 

 On 7/22/05 dialysis was reinstituted due to recurrent electrolyte abnormalities. 
The patient was noted to have an increasing WBC count. On 7/23/05 Ms.
Harvey was felt to be worsening, with the need for increasing oxygen,
decreasing urine output, respiratory failure. She was felt to have worsening
MOFS with the Adult Respiratory Distress Syndrome (ARDS). Her mental
status declined into a deep coma and at 1908 she expired.


Standards of Care



 It is well established that MRSA is an increasingly common cause of soft
tissue infections in the United States. This organism has a propensity to cause
infections in the labial and gluteal areas. This organism is resistant to the
antibiotics used to treat cellulitis, which is more often caused by more sensitive
staphylococcal and streptococcal organisms. The presentation of an indurated,
erythematous, tender circumscribed lesion in the labia should have
immediately suggested the possibility of MRSA. In this setting the standard
of care was to suspect this organism and treat the patient with an appropriate
antibiotic. Dr. Moheb should have started an antibiotic regimen that would
have treated MRSA as well as other likely pathogens. The presentation was
so typical of MRSA, that the standard of care required Dr. Moheb to start
treatment with an appropriate antibiotic. This antibiotic could have been given
orally. Alternately, in a diabetic patient the argument could be made that
hospitalization and initiation of intravenous antibiotic was appropriate until
such time as it was clear that the infection was improving.

 

 . . . Neither Augmentin nor Invanz have [sic] efficacy against MRSA and were
not appropriate antibiotic choices.


 When culture data is obtained, it is the standard of care to follow-up on that
data. This ensures that the patient is treated with an appropriate antibiotic. It
also ensures that the patient is not exposed to an ineffective antibiotic. In the
latter case one is exposing the patient to the risks of antibiotic side effects
without any benefit. When a physician has obtained cultures in the office
setting, it is the standard of care to be certain that any consultant helping treat
the infection be [apprised] of the results. Thus, the standard of care required
that Dr. Moheb inform Dr. Packard as soon as the MRSA culture returned.


 When treating any patient for an infection, one should closely follow the
patient's clinical response. In the case of Ms. Harvey, it was clear that she was
not improving. The standard of care would have necessitated Dr. Moheb and
Dr. Packard entertaining an alternate diagnosis or an alternate infectious agent,
resulting in changing the antibiotic.


 . . . .

 

Violations of the Standards of Care



 Upon initially evaluating Ms. Alberta Harvey, Dr. Moheb made the diagnosis
of cellulitis, despite the clinical picture being incompatible with cellulitis. He
did not consider MRSA nor did he treat the patient for this possibility. This
was a violation of the standard of care by Dr. Moheb.


 . . . .


 Dr. Moheb did not follow up on the culture he did in his office in a timely
fashion. Because of this the initiation of appropriate therapy was delayed for
at least 48 hours. This was a violation of the standard of care by Dr. Moheb.


 From the time Ms. Harvey was admitted . . . on 6/23/05 until the Vancomycin
was initiated on 6/28/05 her labial lesion showed little, if any, improvement. 
Despite this, consideration of alternate diagnoses was not reflected in the chart. 
No antibiotic changes were made. This reflected a breach of the standard of
care by both Dr. Moheb and Dr. Packard.


 . . . .


Causation



 Ms. Harvey died as a result of severe MOFS resulting from severe Clostridium
difficile induced colitis. Inappropriate antibiotic treatment of her original
labial abscess led to the Clostridium difficile infection. Failure to timely
recognize the clostridium difficile infection as well as inappropriate
evaluation, diagnosis[,] and treatment of the complications of the Clostridium
difficile infection led to the development of severe MOFS with respiratory,
renal and metabolic and hemodynamic derangements ultimately causing her
demise.


 By treating the original labial infection of Ms. Alberta Harvey with
inappropriate antibiotics, the labial infection was allowed to progress. This
prompted the initiation of more potent and broader spectrum antibiotic therapy. 
These antibiotics were equally ineffective. Exposing Ms. Harvey to these
unnecessary and ineffective antibiotics put her at risk for becoming colonized
with Clostridium difficile. Ultimately she did become colonized and infected
with Clostridium difficile, which was a proximate cause of her death. Thus[,]
inappropriate evaluation and treatment of the original labial lesion by Dr.
Moheb and Dr. Packard was a proximate cause of the death of Ms. Harvey.


 Had Dr. Moheb started appropriate treatment in his office it is probable that
the labial infection would have been improved or stabilized. Had she been
admitted to the hospital and started on intravenous antibiotics, the infection
would never have progressed as far as it did. This would have lessened her
time in the hospital, decreased her exposure to antibiotics, and in medical
probability prevented the Clostridium difficile colitis.

 After appellees filed Berkowitz's supplemental report, appellants filed a motion to
dismiss. The trial court entered an order overruling appellants' objections to Berkowitz's
reports and denying their motion to dismiss, and appellants filed this appeal.

Issue One


 In their first issue, appellants argue that the trial court erred by determining that
appellees' expert is qualified to render liability and causation opinions under Chapter 74. (3) 
Specifically, appellants assert that since an expert must have training in the specific medical
care services the defendant was providing to the patient, Berkowitz may not opine
concerning the care provided by Moheb because Berkowitz is an infectious disease specialist
rather than a gynecologist.

 With respect to his qualifications, Berkowitz's report provided as follows, in pertinent
part:

 I am a board certified specialist in Internal Medicine and Infectious Diseases.... 


 I am frequently called upon to treat patients with Methicillin Resistant
Staphylococcus Aureus (MRSA) infection. This bacterium can infect a
number of sites of the adult body. Specialists in Infectious Diseases, such as
me, are called upon to evaluate and treat infections in all of these sites. The
labia are not uncommon areas of involvement. As such I am quite familiar
with the evaluation and treatment of labial MRSA lesions. I do not believe
that the standard of care for treating such lesions differs substantively between
an Obstetrician/Gynecologist and an Infectious Diseases specialist.


 I am knowledgeable as to the evaluation, treatment[,] and natural history of
patients with Clostridium difficile induced colitis. I am also knowledgeable
as to the causes and treatment of Multiple Organ Failure Syndrome (MOFS)
as well as its prognosis in patients. I am frequently consulted . . . to care for
patients with these illnesses.


A person who offers an opinion concerning a breach of the standard of care in a healthcare
liability claim must qualify as an expert under section 74.401 of the Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.401 (Vernon 2005). To offer
an opinion regarding whether a physician departed from accepted standards of care, a person
must be a physician who:

 (1) is practicing medicine at the time such testimony is given
or was practicing medicine at the time the claim arose;


 (2) has knowledge of accepted standards of medical care for
the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and


 (3) is qualified on the basis of training or experience to offer
an expert opinion regarding those accepted standards of medical
care.


Id. § 74.401(a)(1)-(3) (emphasis added). Section 74.401(c) provides as follows:

 (c) In determining whether a witness is qualified on the basis of training or
experience, the court shall consider whether, at the time the claim arose or at
the time the testimony is given, the witness:


 (1) is board certified or has other substantial training or
experience in an area of medical practice relevant to the claim;
and


 (2) is actively practicing medicine in rendering medical care
services relevant to the claim.


Id. § 74.401(c) (emphasis added).

 A physician need not be a practitioner in the same specialty as a defendant to qualify
as an expert. See Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996). The plain language
of section 74.401 "focuses not on the defendant doctor's area of expertise, but on the
condition involved in the claim." Blan v. Ali, 7 S.W.3d 741, 746 (Tex. App.--Houston [14th
Dist.] 1999, no pet.); see also McKowen v. Ragston, 263 S.W.3d 157, 162 (Tex. App.--Houston [1st Dist.] 2007, no pet.). Therefore, an expert is not required to "be able to
articulate the standard of care applicable to a specialty other than his own." McKowen, 263
S.W.3d at 162 (citing Blan, 7 S.W.3d at 746-47 & n.3). "Under the Rules of Evidence, the
test is whether the offering party has established that the expert has knowledge, skill,
experience, training, or education on the specific issue before the court." Reddy v. Seale, No.
09-07-372 CV, 2007 WL 5011608, at *3 (Tex. App.--Beaumont Mar. 20, 2008, no pet.)
(mem. op.). In Broders, the Supreme Court cited with approval Nunley v. Kloehn, in which
the district court held that "[t]he focus . . . is on the 'fit' between the subject matter at issue
and the expert's familiarity therewith, and not on a comparison of the expert's title or
specialty with that of the defendant." Broders, 924 S.W.2d at 153 (citing Nunley v. Kloehn,
888 F.Supp. 1483, 1488 (E.D. Wis. 1995)).

 In their brief, appellants argue that "[t]he treatment or medical care services at issue
. . . is the evaluation of a patient presenting with suspected cellulitis, vulvular abscess[,] or
some other labial process in a gynecological setting[,]" yet "Dr. Berkowitz neither practices
nor specializes in gynecology." Appellants also argue that McKowen is distinguishable
because, in that case, the physician continued to provide treatment to the patient, whereas
Moheb did not.

 Berkowitz's second report states that he is a board-certified specialist in internal
medicine and infectious diseases, is engaged in the full-time practice of infectious diseases,
and is frequently called upon to treat patients with MRSA. Berkowitz's curriculum vitae
indicates that he has served as medical director of San Antonio Infectious Diseases
Consultants Infusion Center since 1997, and that he has been a partner at San Antonio
Infectious Diseases Consultants since 1993. Berkowitz also states in the report that the labia
are not an uncommon area for MRSA infections. In addition, Berkowitz asserts that the
standard of care for treating labial MRSA lesions does not differ substantively between a
gynecologist and a specialist in infectious diseases. Berkowitz explains in his report that
Alberta's "presentation was so typical of MRSA[] that the standard of care required Dr.
Moheb to start treatment with an appropriate antibiotic[,]" and that Augmentin is not an
effective antibiotic against MRSA. Furthermore, Berkowitz opines in the report that Moheb
violated the standard of care by initially diagnosing Alberta with cellulitis "despite the
clinical picture being incompatible with cellulitis."

 Appellees' claim against Moheb clearly involves Moheb's alleged failure to properly
diagnose and treat Alberta's MRSA infection during her office visit. Therefore, we find that
appellants' proposed distinction between this case and the facts of McKowen to be without
merit. We hold that the trial court acted within its discretion in concluding that Dr.
Berkowitz's report, when considered as a whole, demonstrated his knowledge of accepted 
standards for the diagnosis, care and treatment of the condition involved in this suit. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.401; Broders, 924 S.W.2d at 153; McKowen, 263
S.W.3d at 162; Blan, 7 S.W.3d at 746-47. Accordingly, we overrule issue one.

Issue Two


 In their second issue, appellants argue that the trial court erred by denying their
objections to Berkowitz's report and their motion to dismiss because the report does not meet
the requirements of Chapter 74 and Palacios. We review a trial court's decision regarding
the adequacy of an expert report under an abuse of discretion standard. Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). "A trial court abuses
its discretion if it acts in an arbitrary or unreasonable manner without reference to any
guiding rules or principles." Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). 
A trial court also abuses its discretion if it fails to analyze or apply the law correctly. Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 A plaintiff asserting a healthcare liability claim must provide each defendant physician
and healthcare provider with an expert report no later than the 120th day after filing suit. 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The statute defines "expert report" as

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.


Id. § 74.351(r)(6) (Vernon Supp. 2008). If a plaintiff furnishes the required report within the
time permitted, the defendant may file a motion challenging the report. Id. § 74.351(l).

 The statute provides that the trial court "shall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the report does not
represent an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)." Id. When determining whether the report represents a good-faith effort
to comply with the statutory requirements, the trial court's inquiry is generally limited to the
four corners of the report. Wright, 79 S.W.3d at 53; Palacios, 46 S.W.3d at 878. To
constitute a good-faith effort, the report "must discuss the standard of care, breach, and
causation with sufficient specificity to inform the defendant of the conduct the plaintiff has
called into question and to provide a basis for the trial court to conclude that the claims have
merit." Palacios, 46 S.W.3d at 875. When a plaintiff sues more than one defendant, the
expert report must set forth the standard of care for each defendant and explain the causal
relationship between each defendant's individual acts and the injury. See Doades v. Syed,
94 S.W.3d 664, 671-72 (Tex. App.--San Antonio 2002, no pet.); Rittmer v. Garza, 65 S.W.3d
718, 722-23 (Tex. App.--Houston [14h Dist.] 2001, no pet.); see also Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a), (r)(6) (A claimant must provide each defendant with an expert
report that sets forth the manner in which the care rendered failed to meet the standards of
care and the causal relationship between that failure and the injuries claimed.). A report that
omits any of the statutory elements is not a good-faith effort. Palacios, 46 S.W.3d at 879. 
However, an expert report need not marshal all of the plaintiff's proof. Wright, 79 S.W.3d
at 52.

 Appellants contend that Berkowitz's report is inadequate because it fails to identify
the defendants by name; fails to identify duty, standard of care, breach of duty, and causation
as to each defendant; fails to provide a factual basis for Berkowitz's opinions and to link his
conclusions to the facts; fails to inform each defendant with sufficient specificity of the
conduct the plaintiffs have called into question; fails to discuss the elements of medical
negligence as to each defendant with sufficient specificity; and contains opinions that are
"speculative, conclusory, vague[,] and assume facts." (4) With respect to Moheb, Berkowitz's
report explains that Alberta presented to Moheb with an "indurated, erythematous, tender
circumscribed lesion [of] the labia" that "should have immediately suggested the possibility
of MRSA[;]" however, Moheb incorrectly diagnosed Alberta's condition as cellulitis despite
the clinical indications to the contrary and prescribed an ineffective antibiotic.

 In addition, the report explains that Moheb violated the standard of care by failing to
consider MRSA as an alternate diagnosis and failed to provide appropriate treatment for
MRSA despite the fact that Alberta failed to improve. Furthermore, Berkowitz's report
states that Moheb's initial inappropriate evaluation and treatment of Alberta's labial lesion
allowed her infection to progress and caused her to be exposed to unnecessary and ineffective
antibiotics, leading to the Clostridium difficile which proximately caused her death. 
According to Berkowitz, if Moheb had started appropriate treatment, Alberta's infection
would have improved or stabilized, and if Moheb had admitted Alberta to the hospital and
given her intravenous antibiotics, "the infection would never have progressed as far as it did. 
This would have lessened her time in the hospital, decreased her exposure to antibiotics, and
in medical probability prevented the Clostridium difficile colitis."

 Berkowitz's report named Moheb individually and discussed how he breached the
standard of care. See Doades, 94 S.W.3d at 671-72. In addition, it was within the trial
court's discretion to conclude that the report adequately stated the standard of care. See
generally Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). The report discussed standard
of care, breach, and causation with sufficient specificity to inform appellants of the conduct
appellees have called into question and to provide a basis for the trial court to conclude that
appellees' claims have merit. See Palacios, 46 S.W.3d at 875; Doades, 94 S.W.3d at 671-72;
Rittmer, 65 S.W.3d at 722-23. Berkowitz's report explained the factual basis for his
statements and linked his conclusions to the facts. See Wright, 79 S.W.3d at 52. Therefore,
we overrule issue two.

Issue Three


 In their third issue, appellants argue that the trial court erred by considering
Berkowitz's supplemental report. According to appellants, because appellees filed
Berkowitz's supplemental report after receiving appellants' objections to the first report, the
trial court should not have considered the supplemental report. According to appellants, "the
Texas Legislature did not intend to allow a plaintiff unlimited opportunities to cure the
deficiencies in the expert report up until the 120-day deadline. Such an interpretation of the
statute is contrary to the plain language and intent of Chapter 74 and leads to an absurd
result."

 As previously discussed, appellees filed Berkowitz's supplemental report within the
120-day deadline. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The Supreme Court
recently held that when a plaintiff files a supplemental report within the 120-day deadline,
but after the defendant has objected to the sufficiency of the report, a trial court does not err
by considering the supplemental report. Leland v. Brandal, 257 S.W.3d 204, 205-06 (Tex.
2008). Appellants do not attempt to distinguish Leland; in fact, neither their brief nor their
reply brief discusses Leland. We hold that the trial court did not abuse its discretion by
considering Berkowitz's timely-filed supplemental report. See id. Accordingly, we overrule
issue three.

Issue Four


 In their fourth issue, appellants argue that the trial court erred by failing to dismiss
appellees' claims against GOWC because appellees "failed to provide a Chapter 74 expert
report as to [its] alleged negligence." Appellees' petition alleged that Moheb evaluated
Alberta at his office at GOWC. Appellees' petition does not explicitly state that appellees'
claims against GOWC are based upon respondeat superior; however, it does allege that the
entity defendants acted through their agents, servants, or employees. Additionally, the
petition asserts that Moheb "practices medicine through" GOWC. Appellees' claims against
GOWC necessarily involve only GOWC's vicarious liability for the actions of Moheb, since
professional entities cannot practice medicine. See Young v. Pinto, No. 09-08-299 CV, 2008
WL 4998346, at *8 (Tex. App.--Beaumont Nov. 26, 2008, no pet. h.) (mem. op.); Hiner v.
Gaspard, No. 09-07-240 CV, 2007 WL 2493471, at *5 (Tex. App.--Beaumont Sept. 6, 2007,
pet. denied) (mem. op.); Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex.
App.--Dallas 2006, no pet.); In re CHCA Conroe, L.P., No. 09-04-453 CV, 2004 WL
2671863, at *1 (Tex. App.--Beaumont Nov. 23, 2004) (orig. proceeding) (mem. op.);
Clements v. Conard, 21 S.W.3d 514, 522-23 (Tex. App.--Amarillo 2000, pet. denied). 
"When a party's alleged health care liability is purely vicarious, a report that adequately
implicates the actions of that party's agents or employees is sufficient." Gardner v. U.S.
Imaging, Inc., No. 08-0268, slip op. at 3 (Tex. Dec. 19, 2008) (per curiam). The conduct of
GOWC is not measured by a medical standard of care; rather, the basis of its liability
involves legal principles. See In re CHCA Conroe, L.P., 2004 WL 2671863, at *1. 
Therefore, appellees were not required to provide an additional expert report as to GOWC. 
See id.; see also Hiner, 2007 WL 2493471, at *5. Accordingly, we overrule issue four and
affirm the trial court's judgment.

 AFFIRMED.


 STEVE McKEITHEN

 Chief Justice


Submitted on October 9, 2008

Opinion Delivered January 15, 2009

Before McKeithen, C.J., Kreger and Horton, JJ.
1. For clarity, when it is necessary to refer to individual appellees, we will refer to them
by their first names.
2. Although Berkowitz called his second report a "supplement," it includes the full text
of his original report, as well as additional material.
3. Appellants' brief also discusses a report by a registered nurse, Sheri Innerarity,
regarding alleged breaches of the standard of care during the course of the nursing care
provided to Alberta; however, appellees do not discuss Innerarity's report in their brief. 
Therefore, we presume that the appellees intend to rely solely on Berkowitz's report to
support the trial court's judgment, and we will not address Innerarity's report.
4. We will address the sufficiency of Berkowitz's reports as to GOWC in our
discussion of appellants' fourth issue.