COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-467-CV

 

 

GRANBURY MINOR EMERGENCY                                         APPELLANTS

CLINIC AND ABEL SALAS,
M.D.

 

                                                   V.

 

TEAGAN THIEL                                                                      APPELLEE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  INTRODUCTION








This is an interlocutory appeal challenging (1)
the adequacy of an expert report prepared by William W. Spangler, M.D., FACEP
addressing the alleged negligence of Appellant Abel Salas, M.D. and (2) the
trial court=s failure to award attorney=s fees
after dismissing with prejudice Appellee Teagan Thiel=s claims
against Appellant Granbury Minor Emergency Clinic.  For the reasons set forth below, we hold that
the trial court did not abuse its discretion by determining that Dr. Spangler=s report
was adequate but did abuse its discretion by failing to award attorney=s fees
to the Clinic; accordingly, we will reverse the portion of the trial court=s order
awarding no attorney=s fees to the Clinic and remand
the issue of attorney=s fees to the trial court.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2006, Thiel sought treatment at the
Clinic and was seen by Dr. Salas.  Thiel
complained of abdominal pain and vomiting. 
Without performing a physical examination or diagnostic testing, Dr.
Salas diagnosed Thiel as suffering from food poisoning and sent her home with a
prescription for an antibiotic.

Thiel=s
symptoms continued to worsen, and she went back to the Clinic on September 6,
2006.  At that time, Thiel was still
suffering from abdominal pain, which had localized to her right side.  Dr. Salas diagnosed Thiel with a urinary
tract infection and gave her a prescription for an antibiotic. 








When Thiel=s
symptoms still did not improve, she went on September 14, 2006 to see her
primary care physician who immediately ordered a CT scan to rule out
appendicitis.  The CT scan confirmed
appendicitis, and Thiel was taken into surgery later that day.  The surgery revealed that Thiel=s
appendix had ruptured and had become gangrenous and that she was suffering from
an intra-abdominal abscess caused by the ruptured appendix.  Because the abscess significantly involved
Thiel=s colon,
she underwent a partial hemicolectomy with anastomisis.  Following the surgery, Thiel underwent
additional surgeries secondary to the delayed diagnosis of her appendicitis. 

Thiel filed suit and timely served a seven-page,
single-spaced expert report by Dr. Spangler along with his four-page curriculum
vitae.  Appellants filed a motion to
dismiss with prejudice.  Appellants
generally denied Thiel=s allegations and specifically
denied that the Clinic is Ain any
way a legal entity subject to liability.@  Appellants asserted objections to Dr.
Spangler=s
qualifications and to the substance of his report, specifically its purported
failure to address the elements of standard of care, breach, and causation
concerning Thiel=s health care liability claims.

After a hearing, the trial court sustained the
Clinic=s
objections to Dr. Spangler=s report
and dismissed with prejudice Thiel=s claims
against the Clinic; the trial court found that the reasonable and necessary
attorney=s fees
for the Clinic were $0.  The trial court
overruled Dr. Salas=s objections to Dr. Spangler=s report
and denied his motion to dismiss.  This
appeal followed.

                 III.  DR. SPANGLER=S REPORT MEETS CHAPTER 74 CRITERIA








In Appellants= first
issue, Dr. Salas argues that the trial court abused its discretion by failing
to dismiss Thiel=s health care liability claims
against him because Dr. Spangler was not qualified to offer his opinions and
because Dr. Spangler=s report fails to adequately set
forth the statutory expert report elements of standard of care, breach, and
causation.

A.     Standard of Review

We review a trial court=s denial
of a motion to dismiss for an abuse of discretion.  Jernigan v. Langley, 195 S.W.3d 91, 93
(Tex. 2006); Ctr. for Neurological Disorders, P.A. v. George, 261 S.W.3d
285, 290B91 (Tex.
App.CFort
Worth 2008, pet. denied); Maris v. Hendricks, 262 S.W.3d 379, 383 (Tex.
App.CFort
Worth 2008, pet. denied).  To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to any guiding rules or principles; in other
words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986).  Merely because a
trial court may decide a matter within its discretion in a different manner
than an appellate court would in a similar circumstance does not demonstrate
that an abuse of discretion has occurred. 
Id.  But a trial court has
no discretion in determining what the law is or in applying the law to the
facts, and thus Aa clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of
discretion.@ 
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig.
proceeding); Ehrlich v. Miles, 144 S.W.3d 620, 624 (Tex. App.CFort
Worth 2004, pet. denied).








B.     Statutory Standards for Expert Reports

A trial court must grant a motion to dismiss a
health care liability claim if it finds, after a hearing, that Athe
[expert] report [filed by the claimant] does not represent an objective good
faith effort to comply with the definition of an expert report@ in the
statute.  Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(l)
(Vernon Supp. 2008).  While the expert
report Aneed not
marshal all the plaintiff=s proof,@ Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46
S.W.3d 873, 878 (Tex. 2001) (construing former art. 4590i, ' 13.01),
it must provide a fair summary of the expert=s
opinions as to the Aapplicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6).








To constitute a good faith effort, the report
must Adiscuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.@  Palacios, 46 S.W.3d at 875.  A report does not fulfill this requirement if
it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Id. at 879.  But the information in the report Adoes not
have to meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.@ 
Id.  The claimant=s expert
must incorporate enough information into the report to fulfill two purposes:
(1) inform the defendant of the specific conduct the plaintiff has called into
question; and (2) provide a basis for the trial court to conclude the claims
are meritorious.  Id.; see also
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(l),
(r)(6).

When reviewing the adequacy of a report, the only
information relevant to the inquiry is the information contained within the
four corners of the document.  Palacios,
46 S.W.3d at 878.  This requirement
precludes a court from filling gaps in a report by drawing inferences or
guessing as to what the expert likely meant or intended.  See id.  However, section 74.351 does not prohibit experts,
as opposed to courts, from making inferences based on medical history.  Marvin v. Fithian, No. 14‑07‑00996‑CV,
2008 WL 2579824, at *4 (Tex. App.CHouston
[14th Dist.] July 1, 2008, no pet.) (mem. op.); see also Tex. R. Evid.
703 (providing that an expert may draw inferences from the facts or data in a
particular case); Tex. R. Evid. 705 (providing that expert may testify in terms
of opinions and inferences).








C.     Dr. Spangler is Qualified

Dr. Salas contends that Dr. Spangler was not
qualified to provide opinions in this case because Dr. Salas is a general
family practitioner while Dr. Spangler is a board-certified emergency room
physician.

The determination of a doctor=s
qualifications to provide an expert report must be made on the basis of the
contents of the report and his curriculum vitae.  Bowie Mem=l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). 
With respect to a person giving opinion testimony regarding whether a
physician departed from accepted standards of medical care, an expert must (1)
be practicing medicine at the time of the testimony or at the time the claim
arose; (2) have knowledge of accepted standards of medical care for the
diagnosis, care, or treatment of the condition involved in the claim; and (3)
be qualified on the basis of training or experience to offer an expert opinion
regarding the standard of care.  See
Tex. Civ. Prac. & Rem. Code Ann. '
74.351(r)(5)(A), ' 74.401(a) (Vernon 2005).  A physician is Aqualified
on the basis of training or experience@ if the
physician is board‑certified or has other substantial training or
experience in an area of medical practice relevant to the claim and is actively
practicing medicine in rendering medical care services relevant to the
claim.  Id. '
74.401(c).








An expert is qualified to give opinion testimony
about the causal relationship between the injury claimed and the alleged
departure from the applicable standard of care if he is Aotherwise
qualified to render opinions on such causal relationship under the Texas Rules
of Evidence.@ 
See id. ' 74.351(r)(5)(C), '
74.403(a) (Vernon 2005).  The Texas Rules
of Evidence provide that A[i]f scientific, technical, or
other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise.@  Tex. R. Evid. 702; see also Roberts v.
Williamson, 111 S.W.3d 113, 121B22 (Tex.
2003) (recognizing that while medical license does not automatically qualify
holder to testify as expert on every medical question, test is not whether
expert practices in a particular field of medicine but rather whether offering
party has established that expert has knowledge, skill, experience, training,
or education regarding specific issue before court that would qualify expert to
give opinion on particular subject, and holding that based on qualifications
and experience, pediatrician was qualified to opine on cause and effect of
neurological injuries).








We review a trial court=s
determination that an expert is qualified under an abuse of discretion standard.  Benish v. Grottie, 281 S.W.3d 184, 198B99 (Tex.
App.CFort
Worth 2009, pet. denied); Mem=l
Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 757 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (citing Broders v. Heise, 924 S.W.2d 148,
151B52 (Tex.
1996)).

Concerning his qualifications, Dr. Spangler=s report
states, in part:

I am an emergency medicine physician currently practicing in Katy,
Texas at Christus St. Catherine=s Hospital. 
I have been licensed to practice medicine in the State of Texas since
1992.[[1]]  I am Board Certified by the American Board of
Emergency Medicine and am an instructor in Advanced Cardiac Life Support and
Advanced Trauma Life Support.  My
attached curriculum vitae is incorporated herein as part of my report.

 

I am currently, and was at the time Dr. Salas treated Teagan Thiel,
practicing medicine in an area relevant to this case.  Throughout my career, I have worked as an
emergency physician and have often been required to evaluate and diagnose a
patient suffering from abdominal pain and acute appendicitis.  I am well familiar with the standard of care
required to diagnose appendicitis.  By
virtue of my education, training, experience and board certification in
emergency medicine, I am familiar with and have knowledge of the accepted
requisite standards of care for the diagnosis and treatment in question in this
case.  I am thus qualified to offer
expert opinions in this matter regarding the care that Teagan Thiel received
from Dr. Abel Salas and the Granbury Minor Emergency Clinic.

 













Concerning Dr. Salas=s
complaint that Dr. Spangler was not qualified to offer opinions in the case
because he is an emergency room physician, not a general family practitioner
like Dr. Salas, we note that Dr. Salas treated Thiel at a minor emergency
clinic; Dr. Salas was not Thiel=s family
doctor, and she did not seek care from him in that capacity.  Moreover, in setting the statutory
qualifications for a chapter 74 expert, the statute does not focus on the
defendant doctor=s area of expertise but on the
condition involved in the claim.  See
Tex. Civ. Prac. & Rem. Code Ann. '
74.401(a)(2) (requiring expert to have Aknowledge
of accepted standards of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim,@ not
knowledge of the defendant doctor=s area
of speciality) (emphasis added); ' 74.401(c)(1),
(2) (recognizing that experts may be qualified on the basis of training or
experience if they are board certified or are actively practicing Ain an
area of medical practice relevant to the claim,@ not in
the same field as the defendant doctor) (emphasis added).  That is, the applicable Astandard
of care@ and an
expert=s
ability to opine on it are dictated by the medical condition involved in the
claim and by the expert=s familiarity and experience
with it, not by the defendant doctor=s area
of expertise.  See, e.g., McKowen
v. Ragston, 263 S.W.3d 157, 162 (Tex. App.CHouston
[1st Dist.] 2007, no pet.) (permitting infectious disease physician to opine on
standard of care for treating infection stemming from arteriovenus access graft
even though defendant doctor was cardiologist); Blan v. Ali, 7 S.W.3d
741, 746B47 &
n.3 (Tex. App.CHouston [14th Dist.] 1999, no
pet.) (holding that board-certified neurologist was not precluded from giving
an opinion that two doctorsCa
cardiologist and an emergency room physicianCbreached
the standard of care in an area in which the neurologist has knowledge, skill,
training, and experience and where the subject of the claim (strokes) fell
squarely within his medical expertise). 
Thus, to the extent Dr. Salas complains in issue one that Dr. Spangler
was not qualified because he is not a general family practice doctor, we
overrule this portion of issue one.








Dr. Spangler=s report
establishes that he was qualified to opine on the applicable standard of care
for the diagnosis, care, or treatment of the illness, injury, or condition
(i.e., appendicitis) involved in Thiel=s claim,
as well as Dr. Salas=s alleged breaches of that
standard.  Dr. Spangler is licensed to
practice medicine in the State of Texas and was practicing medicine at the time
Thiel=s claim
arose.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.401(a)(1).  Dr. Spangler possesses knowledge of accepted
standards of medical care for the diagnosis, care, or treatment of appendicitis
(A[t]hroughout
my career, I have worked as an emergency physician and have often been required
to evaluate and diagnose a patient suffering from abdominal pain and acute
appendicitis.  I am well familiar with
the standard of care required to diagnose appendicitis@).  See id. '' 74.351(r)(5)(A),
.401(a)(2)B(3); Kelly v. Rendon, 255
S.W.3d 665, 674 (Tex. App.CHouston
[14th Dist.] 2008, no pet.) (rejecting argument that experts were Anot
qualified to render opinions against [defendant doctor] because their medical
specialty is in a different medical discipline from his own@ and
holding that Athe statute does not require a
medical expert be practicing in the exact same field as the defendant
physician, but instead must only be actively practicing medicine in rendering
medical care services relevant to the claim@).  Thus, Dr. Spangler meets the qualification
requirements imposed by chapter 74 to offer opinions on the relevant standard
of care and on Dr. Salas=s breaches of that standard.








Dr. Spangler=s report
also establishes that he was qualified to opine on the issue of causation
because he is qualified to render such an opinion under the Texas Rules of
Evidence.  See Tex. Civ. Prac.
& Rem. Code Ann. '' 74.351(r)(5)(C), .403(a);
Tex. R. Evid. 702.  Dr. Spangler is board
certified in emergency medicine and has practiced emergency medicine for over
twenty years.  These credentials and this
experience, set forth within the four corners of Dr. Spangler=s report
and curriculum vitae, sufficiently establish that he is qualified to render an
opinion on causation in this case.  See
Tex. Civ. Prac. & Rem. Code Ann. '' 74.351(r)(5)(C),
.403(a); Tex. R. Evid. 702; see, e.g., Mosely v. Mundine, 249
S.W.3d 775, 779B80 (Tex. App.CDallas
2008, no pet.) (concluding that expert had the knowledge, skill, experience,
training, or education regarding specific emergency room physician=s scope
of practice and holding that expert was therefore qualified to render an
opinion on causation under section 74.351(r)(5)).

D.     Dr.
Spangler=s Report Adequately Sets
Forth the Standard of Care and the Alleged Standard of Care Violations by Dr.
Salas

 

Dr. Salas argues that Dr. Spangler=s report
fails to establish the standard of care for a family or general practitioner,
such as Dr. Salas, or the commonality of standards between his own emergency
medicine practice and the family or general medicine practice of Dr.
Salas.  To the extent that Dr. Salas
argues that Dr. Spangler was not qualified to opine on the standard of care for
the diagnosis and treatment of appendicitis, we have overruled that contention
as set forth above.

Dr. Salas also argues that Dr. Spangler did not
describe what a Athorough history and physical
examination@ required or how Dr. Salas
failed to conduct them or identify what diagnostic testing should have been
ordered.

Dr. Spangler=s report
contains the following:

Standards of Care and Deviations from Standards of Care

 

In reasonable medical probability, the standards of care applicable to
evaluation and treatment of, and the injuries sustained by Teagan Thiel are as
follows:

 








1.     The standard of care
required Dr. Salas to conduct a thorough history and physical examination which
would have lead him to consider further diagnostic evaluation to determine the
cause of her abdominal complaints.  Dr.
Salas= differential diagnosis
should have included ectopic pregnancy, gastritis, appendicitis, urinary tract
infection, pyelonephritis and gastroenteritis. 
Further testing and evaluation to determine the true cause of Teagan
Thiel=s abdominal complaints
should be based upon a thorough and appropriate history and physical
examination which should have included Teagan Thiel=s vital signs.  Had Dr. Salas conducted a thorough history
and physical examination, as the standard of care required, his findings would
have more than likely led him to perform additional testing to determine the true
cause of her abdominal complaints.

 

2.     Without conducting an
appropriate and thorough history and physical examination on August 28, 2006,
Dr. Salas diagnosed Teagan Thiel as suffering from gastroenteritis, commonly a
viral illness.  Although acute gastroenteritis
is most commonly caused by a virus, Dr. Salas prescribed an antibiotic, a
medication used to treat bacterial illnesses which is ineffective on viral
illnesses.  Symptoms of gastroenteritis
also include diarrhea, a symptom that Teagan Thiel did not have when she was
seen by Dr. Salas on August 28, 2006. 
Dr. Salas failed to perform a thorough history and physical examination
which would have lead him to consider further diagnostic evaluations to
determine the cause of Teagan Thiel=s abdominal complaints.  Dr. Salas breached the standard of care and
was negligent when he mis-diagnosed Teagan Thiel with gastroenteritis without
considering and excluding other causes of Teagan Thiel=s abdominal symptoms.

 








3.     On September 6, 2006, when
Teagan Thiel again presented to Dr. Salas at the Granbury Minor Emergency
Clinic, she was complaining of worsening symptoms of abdominal pain that were
localizing to the right side of the abdomen. 
Abdominal pain in the right lower quadrant is a symptom commonly caused
by appendicitis.  At the time of this
second visit, Teagan Thiel had been taking antibiotics prescribed by Dr. Salas
on August 28, 2006, yet he diagnosed her with a urinary tract infection on
September 6, 2006.  The antibiotic
therapy she had been taking should have increased his index of suspicion that
the cause of her abdominal complaints was appendicitis rather than the urinary
tract infection.  Put simply, in light of
her right sided abdominal complaints, Dr. Salas should have considered the
cause of Teagan Thiel=s abdominal complaints as
appendicitis until proven otherwise through an appropriate work-up.  In order to make the proper diagnosis, the
standard of care required Dr. Salas= work-up of Teagan Thiel=s abdominal pain to
include (1) obtaining her vital signs to determine if there was a fever which
is frequently present with appendicitis; (2) obtaining a complete blood count
(CBC) which is a blood test which would have revealed any elevation in her
white blood cell count which is commonly found in patients with appendicitis;
(3) obtaining a pregnancy test since Teagan Thiel was of child-bearing age and
ectopic pregnancy may mimic the signs and symptoms of appendicitis; and (4)
obtaining an abdominal and pelvic CT scan, a radiographic test conducted to
visualize the appendix to determine if it is enlarged, distended or thickened,
findings that indicate inflammation.  Dr.
Salas breached the standard of care by failing to obtain an adequate history,
perform an appropriate physical examination and conduct the work-up necessary
to diagnose the cause of Teagan Thiel=s complaints. 
In reasonable medical probability, had Dr. Salas conducted the work-up
described above, he would have diagnosed Teagan Thiel with appendicitis before
her appendix ruptured spilling bacteria and causing the involvement of the
colon that necessitated its removal on September 14, 2006.  The CT would have in all likelihood revealed
changes indicative of appendicitis that would have led to the correct
diagnosis.  This opinion is based on her
symptoms, the CT findings on September 14, 2006 of appendicitis with extensive
inflammatory changes and the September 14, 2006 operative findings of a ruptured,
gangrenous appendix that had cause extensive disease to the adjacent colon.

 








4.     The standard of care
further required Dr. Salas to refer Teagan Thiel to the hospital emergency
department or a surgeon to treat her appendicitis on September 6, 2006.  Having failed to conduct any meaningful
work-up to determine the cause of Teagan Thiel=s abdominal pain, Dr.
Salas mis-diagnosed her appendicitis and failed to send Teagan Thiel to the
hospital or a surgeon.  In reasonable
medical probability, Dr. Salas= failure to appropriately diagnose Teagan Thiel
and refer her to healthcare providers who could treat her appendicitis resulted
in a delayed diagnosis of her appendicitis. 
During this delayed period the appendix ruptured, spilling bacteria into
the peritoneal cavity.  This bacteria
formed an abscess and infected the colon and resulted, in reasonable medical
probability, in the gangrenous colon found during the September 14, 2006
operation that necessitated the hemicolectomy. 

 








To summarize, Dr. Spangler set forth at least two
specific standard of care violations by Dr. Salas:  (1) he failed to conduct an appropriate and
thorough history and physical examination of Teagan Thiel on both August 28 and
September 6 and failed to perform diagnostic testing on both dates, and (2) he
failed to refer Teagan Thiel to the hospital emergency department or to a
surgeon to treat her appendicitis.  After
setting forth these standard of care violations, Dr. Spangler=s report
sets forth the conduct that the standard of care required in the taking of a
medical history and physical examination: 
(1) obtaining Thiel=s vital
signs to determine if Thiel had a fever, which is frequently present with
appendicitis; (2) obtaining a complete blood count (CBC), which is a blood test
that would have revealed any elevation in her white blood cell count that is
commonly found in patients with appendicitis; (3) obtaining a pregnancy test
since Thiel was of child-bearing age and an ectopic pregnancy may mimic the
signs and symptoms of appendicitis; and (4) obtaining an abdominal and pelvic
CT scan, a radiographic test conducted to visualize the appendix to determine
if it is enlarged, distended, or thickened, which are findings that indicate
inflammation.  The report then sets forth
the treatment that should have been given to meet the standard of careCincluding
referring Thiel to a hospital or to a surgeonCand
opines that Dr. Salas breached the standard of care and was negligent when he
misdiagnosed Thiel with gastroenteritis and with a urinary tract infection
without considering and excluding other causes of Thiel=s
abdominal symptoms.

Thus, contrary to Dr. Salas=s
argument, Dr. Spangler=s report does specifically
describe what a Athorough history and physical
examination@ required, does specifically
describe how Dr. Salas failed to conduct a thorough history and examination,
and does specifically identify what diagnostic testing should have been
ordered. For the purposes of a statutory expert report, statements concerning
the standard of care and breach need only identify what care was expected and was
not given with such specificity that inferences need not be indulged to discern
them.  See Palacios, 46 S.W.3d at
880; Benish, 281 S.W.3d at 198; Thomas v. Alford, 230 S.W.3d 853,
858 (Tex. App.CHouston [14th Dist.] 2007, no
pet.).  Because Dr. Spangler=s report
meets this requirement, we hold that the trial court did not abuse its
discretion by determining that Dr. Spangler=s report
was adequate in this regard.  We overrule
this portion of Dr. Salas=s first issue.








E.     Dr. Spangler=s Report
Adequately Sets Forth Causation: The Alleged Standard of Care Violations by Dr.
Salas Proximately Caused Thiel=s
Hemicolectomy

Dr. Salas next argues that Dr. Spangler=s report
fails to adequately address the causation element of Thiel=s health
care liability claim.  Dr. Salas contends
that Dr. Spangler=s causation opinion is
inadequate because he failed to Aprovid[e]
a time frame within which one would reasonably expect an inflamed appendix to
become gangrenous@ and Autterly
failed to establish when Thiel actually started suffering from appendicitis, as
well as when her appendix ruptured.@  Dr. Salas argues that Dr. Spangler=s
causation opinion stacks Aspeculation upon speculation and
inference upon inference@ concerning when Thiel began
suffering from appendicitis. 








To establish causation, an expert report must
provide information linking the defendant=s
purported breach of the standard of care to the plaintiff=s
injury.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(r)(6); see also
Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd., 249 S.W.3d 380,
390 n.32 (Tex. 2008) (defining Aconclusory@ as A[e]xpressing
a factual inference without stating the underlying facts on which the inference
is based@).  An expert must also explain the basis of his
statements to link his conclusions to the facts.  Bowie Mem=l Hosp., 79
S.W.3d at 52.  To constitute a good faith
effort to establish the causal relationship element, the expert report need not
marshal all of the plaintiff=s proof
or present evidence as if the plaintiff was actually litigating the
merits.  See id. at 52B53; Palacios,
46 S.W.3d at 878.  No magic words such as
Areasonable
medical probability@ are required for
compliance.  Bowie Mem=l Hosp., 79
S.W.3d at 53.  The report, however, must
provide enough information within the document to both inform the defendant of
the specific conduct at issue and to allow the trial court to conclude that the
suit has merit.  Id. at 52.

A review of Dr. Spangler=s report
refutes each of Dr. Salas=s claims concerning its
causation sufficiency.  Dr. Spangler=s report
explains, 

Appendicitis should be diagnosed as early as possible to achieve the
best outcome for the patient.  If a
patient is diagnosed before the appendix perforates, the appendix is typically
removed via a laparoscopic surgical procedure which allows for more rapid
healing and minimal scarring.  In
contrast, if the diagnosis is delayed in a patient until after the appendix
ruptures, a patient may develop complications such as abscess, infection of
other organs or infection of the peritoneal cavity that requires more extensive
and difficult surgery.  After rupture of
the appendix, the longer the diagnosis is delayed, the more extensive the
spread of infection in the abdomen becomes and greater damage to abdominal
structures occurs.

 








In this case, the diagnosis of Teagan Thiel=s appendicitis was
delayed due to Dr. Salas= failure to obtain the
appropriate clinical history or complete an adequate physical examination and
perform the appropriate diagnostic testing to determine the cause of her
abdominal complaints.  Because of this
delay, her appendicitis progressed until the appendix became gangrenous and
ruptured thereby spilling bacteria into her peritoneal cavity.  As a result of the perforation, Teagan Thiel=s colon became infected
and gangrenous which required that a portion of this twenty-two year old=s colon needed to be
surgically removed (hemicolectomy).

 

It is my opinion, based on reasonable medical probability, as
explained in detail above, that Dr. Salas failed to timely diagnose Teagan
Thiel=s appendicitis.  It is further my opinion, based on reasonable
medical probability, that this caused Teagan Thiel=s diagnosis of
appendicitis to be delayed.  Due to this
delay, Teagan Thiel=s appendix ruptured and
her colon became gangrenous.  Her
increasing symptomatology is consistent with appendicitis at different stages
and supports the conclusion that the delay in the diagnosis caused, in
reasonable medical probability, the appendix to rupture.  Initially, appendicitis typically presents
with abdominal pain located around the umbilical area.  As the appendix becomes more distended, the
overlying parietal peritoneum becomes irritated causing the pain to migrate and
become localized to the right lower quadrant. 
When Teagan Thiel initially presented to the Granbury Minor Emergency
Clinic and was seen by Dr. Salas on August 28, 2006, she was not yet
complaining of pain that was localized to the right lower quadrant.  This is indicative of an early
appendicitis.  The second time Teagan
Thiel was seen by Dr. Salas on September 6, 2006, the pain was localizing to
the right side which is indicative of an acute appendicitis with irritated parietal
peritoneum most commonly associated with increased swelling of the appendix
without perforation.

 

Thus, if Dr. Salas had acted within the standard of care and timely
diagnosed Teagan Thiel, her appendix would not have ruptured, her colon would
not have become gangrenous and she would not have had to endure the extensive
surgery she underwent on September 14, 2006 that included removal of part of
her colon.

 








Without restating every sentence in the causation
portion of Dr. Spangler=s report set forth above, a
review of the above paragraphs demonstrates information sufficient enough to
inform Dr. Salas of the specific conduct that Thiel has called into question
and how that conduct purportedly injured Thiel, providing a basis for the trial
court to conclude that Thiel=s claims
against Dr. Salas have merit.  See,
e.g., id. (setting forth when a report is sufficient on causation).  Dr. Spangler links Dr. Salas=s
breaches of the standard of care (Ahaving
failed to conduct any meaningful work-up to determine the cause of Teagan Thiel=s
abdominal pain, Dr. Salas mis-diagnosed her appendicitis and failed to send
Teagan Thiel to the hospital or a surgeon@) to
Thiel=s injury
(A[i]n
reasonable medical probability, Dr. Salas= failure
to appropriately diagnose Teagan Thiel and refer her to healthcare providers
who could treat her appendicitis resulted in a delayed diagnosis of her
appendicitis.  During this delayed period
the appendix ruptured, spilling bacteria into the peritoneal cavity.  This bacteria formed an abscess and infected
the colon and resulted, in reasonable medical probability, in the gangrenous
colon found during the September 14, 2006 operation that necessitated the
hemicolectomy@).








Concerning Dr. Salas=s
argument that Dr. Spangler failed to Aprovid[e]
a time frame within which one would reasonably expect an inflamed appendix to
become gangrenous@ or Autterly
failed to establish when Thiel actually started suffering from appendicitis, as
well as when her appendix ruptured,@ Dr.
Salas points us to no case law or statutory provisions that would require Dr.
Spangler to opine in a chapter 74 expert report when Thiel started suffering
from appendicitis or when her appendix ruptured.  Nonetheless, Dr. Spangler=s report
specifically explains how appendicitis progresses and states that when Dr.
Salas initially saw Thiel, her symptoms (general abdominal pain) were
consistent with early appendicitis; that when he saw her approximately nine
days later, her symptoms (abdominal pain localizing to the right side) were
consistent with acute appendicitis; and that if Dr. Salas had acted within the
standard of care and timely diagnosed Thiel, her appendix would not have
ruptured, and she would not have had to endure the extensive surgery she
underwent on September 14, 2006 that included removal of part of her
colon.  It is enough that Dr. Spangler
opined that Dr. Salas=s breaches of the standard of
care delayed the diagnosis of Thiel=s
appendicitis so that Thiel=s
appendix ruptured after Dr. Salas=s
September 6, 2006 examination and caused Thiel=s colon
to become gangrenous.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6);
see also, e.g., Simonson v. Keppard, 225 S.W.3d 868, 875B76 (Tex.
App.CDallas
2007, no pet.) (causation opinion that failure to timely diagnose cerebellar
infarction or hemorrhage via a CT scan or neurological consult proximately
caused patient=s death was adequate).








Dr. Salas also claims that Dr. Spangler=s
causation opinions are conclusory.  But,
as set forth above, Dr. Spangler=s
causation opinions specifically and extensively set forth all of the facts on
which they are basedCthat is, Thiel=s
symptoms on August 28, her continuing and worsening symptoms on September 6,
and her ultimate ruptured appendix and gangrenous colon.  Thus, Dr. Spangler=s
causation opinions are not conclusory.  See,
e.g., Arkoma Basin Exploration Co., 294 S.W.3d at 390 n.32; Mosely,
249 S.W.3d at 780B81 (holding expert=s
causation opinion was not mere conjecture because it was supported with facts);
Simonson, 225 S.W.3d at 876 (same).

For the same reasons that Dr. Spangler=s
causation opinions are not conclusory, they also do not stack inference upon
inference as alleged by Dr. Salas.  An
inference is a deduction of fact that may be drawn from another fact.  See Black=s Law
Dictionary 700 (5th ed. 1979).  Direct
evidence, on the other hand, is Aevidence
which, if believed, proves the fact without inference or presumption.@  Brown v. E. Miss. Elec. Power Ass'n,
989 F.2d 858, 861 (5th Cir. 1993).  Dr.
Spangler=s
causation opinions constitute direct evidence that Dr. Salas=s
breaches of the standard of care caused Thiel=s
injuries.  Dr. Spangler expressly
explained that

based on reasonable
medical probability, as explained in detail above, . . . Dr. Salas failed to
timely diagnose Teagan Thiel=s appendicitis. 
It is further my opinion, based on reasonable medical probability, that
this caused Teagan Thiel=s diagnosis of
appendicitis to be delayed.  Due to this
delay, Teagan Thiel=s appendix ruptured and
her colon became gangrenous.

 








No inference is required.  Dr.
Spangler expressly states that Dr. Salas=s
breaches of the standard of care caused Thiel=s
injuries.  Likewise, Dr. Spangler
expressly opines that Thiel was suffering from appendicitis when she initially
presented to Dr. Salas on August 28 (Aearly
appendicitis@); that when Thiel presented to
Dr. Salas on September 6, she was suffering from acute appendicitis but her
appendix had not yet ruptured (Apain was
localizing to the right side which is indicative of an acute appendicitis . . .
with increased swelling of the appendix without perforation@)
(emphasis added); and that, as a result of Dr. Salas=s
failure to timely diagnose Thiel=s
appendicitis, her appendix subsequently ruptured (Aif Dr.
Salas had acted within the standard of care and timely diagnosed Teagan Thiel,
her appendix would not have ruptured@).  No inferences are required to support Dr.
Spangler=s
causation opinions.








Viewing the information set forth within the four
corners of Dr. Spangler=s report, we hold that the trial
court did not abuse its discretion by determining that Dr. Spangler=s report
provides a fair summary of his expert opinions as to the Aapplicable
standards of care, the manner in which the care rendered by the physician or
health care provider failed to meet the standards, and the causal relationship
between that failure and the injury, harm, or damages claimed.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6);
see Palacios, 46 S.W.3d at 878; Walters v. Hudoba, No.
02-08-00196-CV, 2009 WL 161079, at *6 (Tex. App.CFort
Worth Jan. 22, 2009, no pet.) (mem. op.). 
Thus, the trial court did not abuse its discretion by determining that
Dr. Spangler=s report constitutes an
objective good faith effort to satisfy the two purposes of section 74.351.  See Palacios, 46 S.W.3d at 879; see
also Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(l),
(r)(6); CHCA Mainland, L.P. v. Wheeler, No. 09-07-00634-CV, 2008 WL
960798, at *5 (Tex. App.CBeaumont Apr. 10, 2008, no pet.)
(mem. op.) (holding that doctor=s expert
report represented a good faith effort to comply with the definition of an
expert report when it expressed opinion that if not for medical center=s breach
of the standard of care, with the symptoms the patient presented at the
emergency room, the patient would have been seen and evaluated by qualified
medical personnel and Awould have been spared the
generalized intraperitoneal sepsis that necessitated more extensive surgery and
an extended hospitalization@).  Accordingly, we overrule the remainder of
Appellants= first issue.

IV.  TRIAL COURT FAILED TO AWARD ATTORNEY=S FEES TO CLINIC








In Appellants= second
issue, the Clinic argues that the trial court abused its discretion when it
refused to award the Clinic attorney=s fees
after dismissing, with prejudice, the health care liability claims Thiel
alleged against the Clinic.  In the
Clinic=s motion
to dismiss, it objected to Dr. Spangler=s
qualifications and the substance of his opinions, moved for dismissal with
prejudice of the claims Thiel brought against the Clinic, and requested
attorney=s
fees.  The trial court thereafter signed
an order sustaining the Clinic=s
objections, granting the Clinic=s motion
to dismiss with prejudice all health care liability claims alleged by Thiel
against the Clinic, and awarding the Clinic A$0@ in
attorney=s
fees.  Thiel did not perfect an appeal
challenging the trial court=s
dismissal with prejudice of her health care liability claims against the
Clinic; thus, the propriety of the trial court=s order
dismissing with prejudice Thiel=s claims
against the Clinic is not before us.[2]  See Tex. R. App. P. 25.1(c) (requiring
any party who seeks to alter the trial court=s
judgment or other appealable order to file a notice of appeal).








When a health care liability claim is dismissed
with prejudice pursuant to Texas Civil Practice and Remedies Code section
74.351(b), the trial court is required to award attorney=s
fees.  Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(b)
(providing that trial court shall award reasonable attorney=s fees).
Statutes providing that a party Ashall@ be
awarded attorney=s fees are not
discretionary.  Bocquet v. Herring,
972 S.W.2d 19, 20 (Tex. 1998); Abilene Diagnostic Clinic v. Downing, 233
S.W.3d 532, 535 (Tex. App.CEastland
2007, pet. denied).  We therefore hold
that the trial court abused its discretion by awarding no attorney=s
fees.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(b); accord Davis
v. Webb, 246 S.W.3d 768, 774 (Tex. App.CHouston
[14th Dist.] 2008, no pet.).

We sustain Appellants= second
issue.

                                          V.  CONCLUSION

Having overruled Appellants= first
issue, we affirm the portion of the trial court=s
November 17, 2008 order denying Dr. Salas=s motion
to dismiss.  Because Thiel does not
challenge the portion of the order granting the Clinic=s motion
to dismiss, we affirm that portion of the order.  Having sustained Appellants= second
issue, we reverse the portion of the trial court=s order
awarding no attorney=s fees to the Clinic and remand
the issue of attorney=s fees to the trial court. 

 

SUE
WALKER

JUSTICE

 

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED:  August 27, 2009











[1]Dr. Spangler graduated
from medical school in 1984 and held licenses in North Carolina and Louisiana
before becoming licensed in Texas.





[2]Likewise, in her
appellate brief, Thiel prays that this court Awill affirm the judgment
of the trial court.@