COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-417-CV

 

 

TEXAS
BACK INSTITUTE, P.A.                                            APPELLANTS

D/B/A TEXAS BACK
INSTITUTE

AND WILLIAM D. BRADLEY,
M.D.

 

                                                   V.

 

BRENDA
PETERS                                                                    APPELLEE

 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellants Texas Back Institute, P.A. d/b/a Texas
Back Institute and William D. Bradley, M.D. appeal the trial court=s orders
denying their objections to Appellee Brenda Peters=s tendered
expert report and denying their motion to dismiss Peters=s health
care liability claims.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(9)
(Vernon 2008), ' 74.351(a), (b) (Vernon
Supp. 2009).  In a single issue, divided
into two subissues, Appellants argue that Carl M. Berkowitz, M.D., the
physician who authored Peters=s expert
report, is not qualified to render an expert opinion regarding the accepted
standards of care applicable to this case and that the common law doctrine of
res ipsa loquitur does not provide an exception to the requirement that Peters
serve a section 74.351(a) expert report. 
We will affirm.

II.  Factual and Procedural Background

According to Peters=s
original petition, on July 30, 2007, Dr. Bradley performed a Amicrodiske[c]tomy
at L5-S1 level with a hemilaminectomy.@  At the conclusion of the procedure, Dr.
Bradley confirmed that all sponge, needle, and instrument counts were
correct.  Peters thereafter developed Asevere complications@ at the
surgical site, including swelling, redness, purulent pus, high fever, and aches
and pains.  On or about August 27, 2007,
Peters underwent an incision and drainage procedure at the surgical site during
which a medical sponge left from the microdiskectomy was discovered.  Peters consequently underwent additional
medical procedures, rehabilitation, and physical therapy.








Peters filed her original petition on May 23,
2008, alleging that she had suffered injuries and damages proximately caused by
Appellants= negligence in failing to
properly perform the appropriate and correct examinations, treatment, and
procedures associated with the microdiskectomy; that Appellants committed gross
negligence; and that res ipsa loquitur applies to her cause of action.  Peters also alleged that Texas Back Institute
is vicariously liable for Dr. Bradley=s
actions under the doctrine of respondeat superior.  Pursuant to civil practice and remedies code
section 74.351(a), Peters timely served Appellants with Dr. Berkowitz=s expert
report and curriculum vitae.  Id. ' 74.351(a).








Appellants filed objections to Dr. Berkowitz=s report
challenging (1) his qualifications to opine on the standards of care
applicable to this case and (2) any contention by Peters that no expert
report is required to be served because the doctrine of res ipsa loquitur
applies to the case.  Before the
expiration of 120 days from the date Peters filed her original petition, she
served Appellants with an addendum to Dr. Berkowitz=s
report.  Appellants thereafter filed
their first supplemental objections to Dr. Berkowitz=s report
and addendum and their motion to dismiss Peters=s claims,
again challenging Dr. Berkowitz=s
qualifications and arguing that res ipsa loquitur is not an exception to
section 74.351(a)=s service requirement.  The trial court overruled Appellants=
objections to Dr. Berkowitz=s report
and denied their motion to dismiss.  This
interlocutory appeal followed.

III.  Dr. Berkowitz=s
Qualifications

In the first part of their only issue, Appellants
argue that the trial court abused its discretion by denying their motion to
dismiss because Dr. Berkowitz=s report
Adoes not
demonstrate, or even claim, that he is qualified to opine as to the standard of
care applicable to an orthopedic surgeon in the performance of postoperative
procedures to prevent the retention of a sponge following spinal surgery.@

A.     Standard of Review

We review a trial court=s order
on a motion to dismiss a health care liability claim for an abuse of
discretion.  Jernigan v.
Langley, 195 S.W.3d 91, 93 (Tex. 2006). 
A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner or if it acts without reference to any guiding rules or
principles.  Bowie Mem'l Hosp.
v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986)).  We may not substitute our judgment for the
trial court=s judgment.  Id. 
Nor can we determine that the trial court abused its discretion merely
because we would have decided the matter differently.  Downer, 701 S.W.2d at 242.








B.     Expert Report Requirements

Civil practice and remedies code section 74.351
provides that, within 120 days of filing suit, a plaintiff must serve expert
reports for each physician or health care provider against whom a liability
claim is asserted.  Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(a).  An expert report is a written report by an
expert that provides a fair summary of the expert=s
opinions regarding the applicable standard of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standard, and the causal relationship between that failure and the injury,
harm, or damages claimed.  Id. ' 74.351(r)(6).  If a claimant timely furnishes an expert
report, a defendant may file a motion challenging the report=s
adequacy.  See id. ' 74.351(a),
(c), (l).  A trial court must
grant a motion to dismiss based on the alleged inadequacy of an expert report
only if it finds, after a hearing, Athat the
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.  Id. ' 74.351(l).








The information in the report does not have to
meet the same requirements as evidence offered in a summary judgment proceeding
or at trial, and the report need not marshal all the plaintiff=s proof,
but it must include the expert=s
opinions on each of the elements identified in the statuteCstandard
of care, breach, and causation.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878B79 (Tex.
2001); Thomas v. Alford, 230 S.W.3d 853, 856 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).  To qualify
as a good faith effort, an expert report must (1) inform the defendant of
the specific conduct the plaintiff has called into question and
(2) provide a basis for the trial court to conclude that the plaintiff=s claims
have merit.  Palacios, 46 S.W.3d
at 879; Gray v. CHCA Bayshore L.P., 189 S.W.3d 855, 859 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  A report
does not fulfill these two purposes if it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Palacios, 46 S.W.3d at 879.  In assessing the report=s
sufficiency, the trial court may not draw any inferences; it must rely
exclusively on the information contained within the report=s four
corners.  Bowie Mem=l Hosp., 79
S.W.3d at 52; Palacios, 46 S.W.3d at 878.

Under section 74.401, a person may qualify as an
expert witness on the issue of whether a physician departed from accepted
standards of medical care only if the person is a physician who

(1) is practicing
medicine at the time such testimony is given or was practicing medicine at the
time the claim arose;

 

(2) has knowledge of
accepted standards of medical care for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and

 

(3) is qualified on
the basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care.








Tex. Civ. Prac. & Rem. Code Ann. ' 74.401(a)
(Vernon 2005).  In determining whether a
witness is qualified on the basis of training or experience under section
74.401(a)(3), the court shall consider whether, at the time the claim arose or
at the time the testimony is given, the witness (1) is board certified or
has other substantial training or experience in an area of medical practice
relevant to the claim and (2) is actively practicing medicine in rendering
medical care services relevant to the claim. 
Id. ' 74.401(c).








In delineating the statutory qualifications for a
chapter 74 expert, the relevant provisions focus on the defendant physician=s area
of expertise and on the condition involved in the claim.  See id. ' 74.401(a)(2)
(requiring expert to have Aknowledge
of accepted standards of medical care for the diagnosis, care, or treatment of
the illness, injury, or condition involved in the claim@
(emphasis added)), ' 74.401(c)(1), (2)
(recognizing an expert may be qualified on the basis of training or experience
if he or she is board certified or is practicing Ain an
area of medical practice relevant to the claim@
(emphasis added)).  The applicable
standard of care and an expert=s
ability to opine on it are thus dictated by the medical condition involved in
the claim and by the expert=s
familiarity and experience with that condition. 
See Granbury Minor Emergency Clinic v. Thiel, 296 S.W.3d
261, 267 (Tex. App.CFort Worth 2009, no pet.);
McKowen v. Ragston, 263 S.W.3d 157, 162B63 (Tex.
App.CHouston
[1st Dist.] 2007, no pet.) (permitting infectious diseases physician to opine
on standard of care for treating infection stemming from AV graft even though
defendant doctor was cardiothoracic surgeon); Blan v. Ali, 7 S.W.3d 741,
746B47 &
n.3 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).








An expert report concerning standards of care for
physicians authored by a person who is not qualified to testify cannot
constitute an adequate report.  Moore
v. Gatica, 269 S.W.3d 134, 140 (Tex. App.CFort
Worth 2008, pet. denied).  A[T]here
is no validity . . . to the notion that every licensed medical
doctor should be automatically qualified to testify as an expert on every
medical question.@ 
Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996).  However, Athere
are certain standards of medical care that apply to multiple schools of
practice and any medical doctor.@  Blan, 7 S.W.3d at 746.  A physician Awho is
not of the same school of medicine [as the defendant] . . . is
competent to testify if he has practical knowledge of what is usually and
customarily done by a practitioner under circumstances similar to those
confronting the defendant.@  Ehrlich v. Miles, 144 S.W.3d 620, 625
(Tex. App.CFort Worth 2004, pet.
denied).  The report must generally
demonstrate that the expert has knowledge, skill, experience, training, or
education regarding the specific issue before the court that would qualify the
expert to give an opinion on that particular subject.  Id. (citing Roberts v. Williamson,
111 S.W.3d 113, 121 (Tex. 2003)).  Our
analysis of Dr. Berkowitz=s qualifications is limited to
the four corners of the report and curriculum vitae.  See Polone v. Shearer, 287 S.W.3d 229,
238 (Tex. App.CFort Worth 2009, no pet.).

C.     Dr. Berkowitz Is Statutorily Qualified to Opine
about the Accepted Standards of Care

 

Dr. Berkowitz=s report
states in relevant part as follows:

I am Board Certified in
Internal Medicine and Infectious Diseases. 
I am currently licensed in the State of Texas and am engaged in the full
time practice of Infectious Diseases.  Details
of my education, training and experience are included in the accompanying curriculum
vitae, which is incorporated herein. . . .

 

. . . I am aware of the definitions of negligence,
standard of care, and proximate cause applicable to Denton County, Denton,
Texas, and have relied upon them in the formation of the following
opinions.  Further, the care of a
patient with a retained foreign body is within the field of expertise of any
Infectious Diseases specialist.  I
have over twenty years of experience in Internal Medicine and Infectious
Diseases, personal knowledge and education, training and experience caring for
this type of patient.  [Emphasis
added.]

 

The addendum to Dr. Berkowitz=s report
states in relevant part as follows:

This addendum will specifically address the issue of responsibility
for retained foreign bodies, and my familiarity with the standards applicable
to this issue.

 

In my years of experience working with surgeons in hospitals, as well
as my experience on Quality Assurance Committees, it is well known that the
responsibility for assuring that no foreign body is left in a patient is at
least shared by the operating surgeon.  This is
even more the case when the surgeon specifically states that the sponge count
is correct.








It is known to me through my years of experience working with
surgeons, as well as my work on Quality Improvement committees, that the use of
radiopaque materials is recommended in the operating room, and that the
appropriate utilization of radiologic studies is indicated to prevent leaving
foreign bodies in the postoperative patient.

 

This knowledge is neither limited to, nor specific to surgeons or
those who work in the operating room.  [Emphasis
added.]

 

According to his curriculum vitae, Dr. Berkowitz
became licensed to practice medicine in Texas in 1986; he is certified by the
American Board of Internal Medicine and the Subspecialty Board of Infectious
Diseases; he has had an active hospital staff appointment with the Methodist
Hospital System, Baptist Hospital System, and Christus Santa Rosa Hospital
since 1988; he has had an active hospital staff appointment with the Methodist
Ambulatory Surgical Hospital since 1993; he served as Chief of Staff for the
Southwest Texas Medical Hospital from 2002B2003; he
has been a Partner with San Antonio Infectious Diseases Consultants since 1993;
and he has served as Medical Director for the San Antonio Infectious Diseases
Consultants Infusion Center since 1997.








Appellants= chief
complaint regarding Dr. Berkowitz=s
qualifications to opine about the applicable standard of care is that his
report fails to demonstrate that he has sufficient training or experience in
performing surgical or post-operative procedures to prevent the retention of a
sponge following spinal surgery or any surgery. 
In other words, they contend that the information contained in his
report and curriculum vitae only qualifies him to opine about the standard of
care for a patient once a retained foreign body has been found as
opposed to procedures to prevent the retention of a sponge.  To the extent there is any relevant
distinction, Dr. Berkowitz does not limit his qualifications to opine about the
standard of care for a patient once a retained foreign body has been
found.  He states in his report that in
his years of experience working with surgeons in hospitals and on quality
assurance committees, it is well known that the responsibility for assuring
that no foreign body is left in a patient is shared by the operating
surgeon.  Dr. Berkowitz also states that
in his years of experience working with surgeons and working on quality
improvement committees, the use of radiopaque materials is recommended in
the operating room and that the appropriate utilization of
radiologic studies is indicated to prevent leaving foreign bodies in the
postoperative patient.  Thus,
contrary to Appellants= argument, Dr. Berkowitz=s report
contains information expressly relevant to his qualifications to opine about
the standards of care applicable to procedures to prevent the retention
of a medical sponge following surgery.[2]








Dr. Berkowitz=s report
and curriculum vitae show that he is familiar and has experience with the
condition involved in the claim.  See
Thiel, 296 S.W.3d at 267; McKowen, 263 S.W.3d at 162.  Peters did not sue Dr. Bradley and Texas Back
Institute for injuries and damages that she incurred as a result of Dr. Bradley=s and
Texas Back Institute=s alleged negligence in regard
to the Ameans,
methods, or manner@ in which Dr. Bradley performed
the microdiskectomy at L5-S1 level with a hemilaminectomy.  Rather, Peters sued Dr. Bradley and Texas
Back Institute for injuries and damages that she incurred as a result of Dr.
Bradley=s and
Texas Back Institute=s alleged negligence in leaving
a medical sponge in her body after performing the surgery.[3]  The medical condition involved in the claim
thus concerns a physician or health care provider=s
failure to recover a foreign body from a patient after surgery.  To qualify as an expert under section 74.401,
Dr. Berkowitz has to demonstrate that he has knowledge, skill, experience,
training, or education regarding this medical condition.  See Ehrlich, 144 S.W.3d at 625.








According to his report and curriculum vitae, Dr.
Berkowitz has over twenty years=
experience in internal medicine and infectious diseases, which includes
multiple active hospital staff appointments and serving as Chief of Staff for
the Southwest Texas Medical Hospital; he is engaged in the full-time practice
of infectious diseases; he has personal knowledge, education, training, and
experience caring for patients like Peters; and, significantly, he expressly
opines that the standards of care for a patient with a retained foreign bodyCwhich
includes procedures to prevent the retention of a medical sponge following
surgeryCis
within the field of expertise of any infectious diseases specialist.  This information, together with the portions
of his report opining about the standards of care applicable to procedures to
prevent the retention of a medical sponge following surgery, demonstrates that
Dr. Berkowitz has knowledge, skill, experience, training, or education
regarding the condition involved in the claim; he Ahas
practical knowledge of what is usually and customarily done by a practitioner
under circumstances similar to those confronting [Appellants].@  See id.








Appellants do not challenge the adequacy of Dr.
Berkowitz=s report as it pertains to his
opinions about the applicable standard of care, breach of the standard of care,
and causation.[4]  Dr. Berkowitz=s report
and curriculum vitae demonstrate his qualifications as an expert witness under
section 74.401 to opine on the issue of whether Appellants departed from the
accepted standards of care applicable to this case.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.401(a)(1)B(3).  Accordingly, in light of the information
contained in Dr. Berkowitz=s report
and curriculum vitae, we hold that the trial court did not abuse its discretion
by denying Appellants= objections to Dr. Berkowitz=s expert
report and Appellants= motion to dismiss Peters=s health
care liability claims.  See Wright,
79 S.W.3d at 52.  We overrule this part
of Appellants= issue.

Because we overrule the part of Appellants= issue
pertaining to Dr. Berkowitz=s
qualifications, we need not additionally address the portion of their first
issue arguing that res ipsa loquitur is not an exception to the requirement
that Peters serve an expert report.  See
Tex. R. App. P. 47.1.

 








IV.  Conclusion

Having overruled the first part of Appellants= issue,
and having determined that we need not reach the remaining part of their only
issue, we affirm the trial court=s orders
denying Appellants= objections to Dr. Berkowitz=s report
and denying Appellants= motion to dismiss Peters=s health
care liability claims.

 

 

BILL
MEIER

JUSTICE

 

PANEL:  MCCOY and MEIER, JJ.

 

DELIVERED:  December 23, 2009

 











[1]See Tex. R. App. P. 47.4.





[2]The cases relied on by
Appellants are therefore inapposite.  See
Reardon v. Nelson, No. 14-07-00263-CV, 2008 WL 4390689, at *3B4 (Tex. App.CHouston [14th Dist.]
Sept. 30, 2008, no pet.) (mem. op.); Methodist Health Care Sys. of San
Antonio, Ltd. v. Rangel, No. 04-05-00500-CV, 2005 WL 3445994, at *2B3 (Tex. App.CSan Antonio Dec. 14,
2005, pet. denied) (mem. op.).





[3]Peters alleged in her
original petition that a foreign body was discovered during the emergency
surgery that she underwent on or about August 27, 2007, and that the foreign
body was determined to be a medical sponge that Ahad not been properly
recovered at the close of the previous procedure.@





[4]Dr. Berkowitz identifies
that the applicable standards of care required Dr. Bradley to perform a sponge
and needle count, to perform an x-ray after completing the procedure if
radiopaque sponges were used, and to make appropriate records.  He opines that Dr. Bradley breached the
applicable standards of care by leaving a sponge in Peters, by failing to
perform a proper sponge count, and by failing to order an x-ray to determine
whether any sponges had been left inside Peters.  Dr. Berkowitz opined that the retained sponge
caused an infection to develop in Peters and that the infection would not have
developed had the sponge not been left inside Peters.