# NO. 12-24-00079-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ARUP LABORATORIES, INC.,* *APPELLANT* | § | *APPEAL FROM THE 4TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JAMES H. CRAWFORD & RITA ANNETTE CRAWFORD,* *APPELLEES* | § | *RUSK COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

James H. Crawford and Rita Annette Crawford brought medical malpractice claims against several health care providers, including ARUP Laboratories, Inc. After the Crawfords served ARUP with the supplemental expert report and curriculum vitae of Lincoln P. Miller, M.D., ARUP filed objections to Dr. Miller's report. The trial court overruled ARUP's objections. In two issues, ARUP asserts the trial court erred because (1) Dr. Miller is not qualified to opine as to the standard of care applicable to ARUP, and (2) Dr. Miller's causation opinion as to ARUP is conclusory and requires impermissible gap-filling. We affirm.

## BACKGROUND

James Crawford[1] sought treatment at Longview Regional Medical Center for chest pain and shortness of breath. After medical testing, James underwent a coronary artery bypass graft surgery on November 4, 2020. Initially, James responded well to the surgery, and was discharged from the hospital after a few days.

---

[1] To avoid confusion, when subsequently referencing only one of the Crawfords, we will utilize the first name only.

Unfortunately, James's surgical wound did not heal and began draining. After several weeks, James's wound still had drainage, and he was dizzy and felt poorly. On December 30, James underwent debridement of the wound, and cultures were taken and tested. James took prescribed antibiotics, but his wound still did not heal.

James self-treated with Epsom salt to no avail. He sought treatment from Longview Center for Wound Healing and Hyperbaric Medicine, and was referred to Dr. Anita Scribner, a physician who specializes in infectious disease. He also sought treatment at the emergency room of Longview Regional Medical Center, where cultures again were taken and tested, but showed no growth.

James underwent another debridement of the wound on April 16, 2021, and again cultures were taken and tested. James took different prescribed medications without success.

On May 4, an additional culture was taken from James's wound. From testing of this culture, the Christus Good Shepherd Laboratory isolated mycobacterium. Christus Good Shepherd Laboratory sent the culture to ARUP for further testing. ARUP identified James's infection as containing mycobacterium abscessus group.

From the medical records, it appears as though Dr. Scribner was not informed of this finding. In a medical note from July 9, Dr. Scribner claimed, "All previous cultures have been no growth . . . ."

In August, James again self-referred to a different doctor. On September 2, James was admitted to St. Luke's Woodhaven Hospital. Several cultures were taken from the wound site and tested, which revealed that James's infection was a rapid growing mycobacterial infection. In October, the infection was identified as also containing mycobacterium fortuitum. James was treated with several additional debridement procedures and different antibiotics. James was discharged from St. Luke's in December 2021.

Believing that James received substandard or negligent medical treatment, the Crawfords sued several of their medical providers. Although the Crawfords did not initially sue ARUP, in their Fourth Amended Petition, they added claims that ARUP failed to timely and appropriately report critical laboratory test results related to the finding of the mycobacterial infection to other

2

medical providers.[2]  The Crawfords timely served ARUP with the supplemental expert report and curriculum vitae of Dr. Miller.  ARUP objected to Dr. Miller's report, and the trial court held a hearing on the matter.  The trial court overruled ARUP's objections.  This appeal followed.

<h2 style="text-align:center">EXPERT WITNESS</h2>

In its first issue, ARUP contends the trial court abused its discretion by finding that Dr. Miller is qualified to offer opinions against ARUP.  Specifically, ARUP argues that Dr. Miller, an internal medicine physician specializing in infectious disease, is not qualified to opine about the standard of care required of a laboratory when performing tests and communicating test results.

In its second issue, ARUP asserts the trial court abused its discretion by finding that Dr. Miller's opinion that ARUP caused injury to the Crawfords is sufficient.  Specifically, ARUP argues that Dr. Miller's causation opinion is conclusory and does not explain how and why ARUP's alleged negligence caused James's injuries.  We address both issues in turn.

## Medical Liability Claim Requirements and Standard of Review

The Texas Medical Liability Act requires that a claimant serve an expert report on each party against whom he asserts a health care liability claim.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2023).  The purpose of evaluating an expert report is to deter frivolous claims, not to dispose of claims regardless of their merits.  ***Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 631 (Tex. 2013).  An expert report must fairly summarize the expert's opinions regarding (1) the applicable standards of care, (2) the manner in which the care provided failed to meet the standards of care, and (3) the causal relationship between the failure and the injury, harm, or damages claimed.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); ***Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios***, 46 S.W.3d 873, 878 (Tex. 2001).  A proper expert report must (1) inform the defendant of the specific conduct the claimant has called into question and (2) provide a basis for the trial court to conclude that the claims have merit.  ***Loasiga v. Cerda***, 379 S.W.3d 248, 260 (Tex. 2012).

We review a trial court's ruling on the qualifications of an expert under Chapter 74 for an abuse of discretion.  ***Mem'l Hermann Healthcare Sys. v. Burrell***, 230 S.W.3d 755, 757 (Tex.

---

[2] The Crawfords later filed a Fifth Amended Petition.  The Crawfords claims against ARUP in their Fifth Amended Petition continued to allege that ARUP failed to properly communicate the critical finding of a mycobacterial infection.

App.—Houston [14th Dist.] 2007, no pet.); ***McKowen v. Ragston***, 263 S.W.3d 157, 160 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Likewise, we review a trial court's ruling on the sufficiency of an expert's report under Chapter 74 for an abuse of discretion. ***Van Ness v. ETMC First Physicians***, 461 S.W.3d 140, 142 (Tex. 2015). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to guiding rules or principles. ***Id.***; ***Jelinek v. Casas***, 328 S.W.3d 526, 539 (Tex. 2010). In exercising its discretion, the trial court must review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See* ***Van Ness***, 461 S.W.3d at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. ***Gray v. CHCA Bayshore L.P.***, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A trial court has no discretion to apply the law incorrectly, and thus, we review legal determinations de novo. *See* ***Van Ness***, 461 S.W.3d at 142; ***In re Sw. Bell Tel. Co.***, 226 S.W.3d 400, 403 (Tex. 2007).

## Qualifications

An expert witness in a suit involving a health care liability claim against a health care provider must (1) practice health care in a field that involves the same type of care or treatment if the defendant health care provider is an individual, (2) have knowledge of the accepted standards of care, and (3) be qualified on the basis of training or experience to offer an opinion in the relevant area of health care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b) (West 2017). The court should consider whether the expert witness is certified by a licensing agency or has other substantial training or experience in the relevant area of health care and is actively practicing in the relevant area of health care. ***Id.*** § 74.402(c). We analyze the expert's training and experience regarding the specific issues applicable to the case in determining whether an expert is qualified. ***Methodist Hosp. v. Shepherd-Sherman***, 296 S.W.3d 193, 197 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A physician expert may testify as to the standard of care of a different area of practice when there is commonality to the care given in several fields and the physician expert is qualified in one of those fields. *See* ***Blan v. Ali***, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (dealing with predecessor statute to Chapter 74); ***McKowen***, 263 S.W.3d at 164 (applying same standard to Chapter 74 claim). The focus is on the expert witness's expertise regarding the condition involved in the claim, not the defendant health care provider's area of practice. ***McKowen***, 263 S.W.3d at 164.

4

**Application**

Dr. Miller is an internal medicine specialist and infectious disease subspecialist with more than a quarter of a century of experience as a doctor. Dr. Miller evaluates and treats patients, including patients with post-operative wound infections. He also teaches medical school students on infectious disease treatments. Dr. Miller utilizes lab testing in the treatment of patients, and is familiar with appropriate lab report communication. He also asserts familiarity with the standard of care for laboratories such as ARUP.

ARUP notes that Dr. Miller's curriculum vitae fails to identify any experience working in a laboratory, supervising laboratory personnel, or teaching courses to laboratory technicians. Considering his experience, ARUP argues that Dr. Miller is not qualified as to ARUP's standard of care in conducting laboratory tests or in communicating test results. We disagree.

First, Dr. Miller does not take issue with ARUP's method of conducting laboratory tests. Instead, Dr. Miller asserts that ARUP's testing disclosed a critical finding, and that critical finding was not properly communicated to the ordering physician of record or the ordering laboratory.

As an internal medicine physician specializing in infectious disease, Dr. Miller's opinion that ARUP's identification of James's infection containing mycobacterium abscessus group is a critical finding that is squarely within his bailiwick. It is of no consequence that Dr. Miller's training and work is as a physician, and not in a laboratory, as the determination of whether a finding is a critical finding from a laboratory is an area of commonality between the two fields.

Dr. Miller's opinion that ARUP's standard of care required the critical finding to be communicated by telephone to the ordering physician or laboratory also is in the intersection of his field and that of the laboratory. For Dr. Miller to know the responsibilities of physicians specializing in infectious disease, he must also possess expertise of when and how critical findings from laboratories should be communicated. Having shown lengthy experience treating patients with infectious diseases and teaching medical students on the treatment of infectious diseases, Dr. Miller has shown himself qualified to testify as to the standards of care for a laboratory in those instances of commonality such as what constitutes proper communication of critical findings.

As to both Dr. Miller's opinion that (1) ARUP's identification of James's infection containing mycobacterium abscessus group is a critical finding, and (2) ARUP must communicate by telephone to the ordering physician or laboratory the critical finding—the Crawfords established that Dr. Miller possesses expertise regarding the condition involved in the claim. *See*

5

*McKowen*, 263 S.W.3d at 164. Thus, we hold that the trial court did not abuse its discretion in determining that Dr. Miller was qualified as an expert witness on behalf of the Crawfords and against ARUP.

We overrule ARUP's first issue.

## Causation

One requirement of an expert report is to establish a causal relationship between the failure of the health care provider and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). "A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Palacios*, 46 S.W.3d at 878. The report need not "meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879.

A report that merely states the expert witness's conclusion regarding causation does not provide sufficient information to fulfill the dual purposes of an expert report. *Id.* An expert must explain the basis for his statements and link his conclusions to the facts. *Jelinek*, 328 S.W.3d at 539. And that includes facts that support the conclusion that the health care provider's actions proximately caused the injury. *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). The elements of proximate cause are (1) cause in fact and (2) foreseeability. *Id.* To satisfy this standard, the expert report must explain how the complained-of act or omission of the health care provider was a substantial factor in bringing about the harm— but for the act or omission, the harm would not have occurred—and the harm was foreseeable. *Id.*

## Application

Dr. Miller signed a supplemental report on November 30, 2023, in which he outlined the Crawfords' complaints against ARUP. Dr. Miller specifically referenced causation, stating, "This breach of the standard of care by [ARUP] contributed to cause substantial delay in the diagnosis and appropriate medical treatment of [James] and was a cause of the injuries to [James]." ARUP asserts that Dr. Miller's causation opinion does not explain adequately how and why ARUP's alleged negligence caused James's injuries. In analyzing whether Dr. Miller's causation opinion is sufficient, we fully credit all of Dr. Miller's factual statements and opinions. *See Van Ness*, 461 S.W.3d at 144.

As we consider whether Dr. Miller adequately opined that the Crawfords' complaints caused harm to James, we must do so against the backdrop of Dr. Miller's opinion, "The overriding

6

context of [James's] postoperative infection is that untreated it is persistent and progressive." Dr. Miller's report further made clear that the health care providers needed to determine the type of infection before the infection could be properly treated. In other words, the first step in James's healing was identifying the type of infection with which he was dealing.

In his report, Dr. Miller stated:

> . . . [ARUP] had a key role in the potential for an early diagnosis of [James's] defining mycobacterial sternal wound infection. However, the results were not directly communicated by [ARUP] to the ordering physician of record or the ordering laboratory, and this is a deviation from best clinical laboratory practice and the standard of care.

He continued further as follows:

> . . . there is no documentation on the [ARUP] report of direct communication of the results noted above with Dr. Chastain, the ordering physician, or a representative of the [Christus Good Shepherd Laboratory] that sent [ARUP] the mycobacterial positive culture for identification and susceptibility testing.

Finally, Dr. Miller opined:

> When the result is a critical value, or result, like a positive mycobacterial culture result, then it is best practice and the standard of care to directly contact the ordering physician by telephone. There is no documentation of this positive M. abscessus Group culture result being communicated by phone directly to the ordering physician, Dr. Chastain, by [ARUP], or directly by phone to the ordering physician, Dr. Chastain, from the [Christus Good Shepherd Laboratory] upon their receipt of the ARUP patient mycobacterial culture report for [James] on 21 May 2021.

The substantial delay referenced in Dr. Miller's causation opinion is from May 21, 2021, until at least August 27, 2021. Although Dr. Miller's opinion as to causation is succinct and direct, it is not conclusory. If ARUP properly communicated the information to the treating physicians, James's correct treatment of the infection would have occurred several months earlier. *See Jelinek*, 328 S.W.3d at 539 (noting expert should link conclusions to the facts). Because James's infection was persistent and progressive, the infection was not to resolve by itself and needed to be identified before it could be treated properly. *See id.* Thus, Dr. Miller's report provides a viable opinion that ARUP's conduct was a substantial factor in James's infection lasting those several months from the time of ARUP's critical laboratory finding until proper treatment began. His report further provides a viable opinion that, but for ARUP's failure to properly communicate the results of the test, James's proper treatment would have begun earlier, and it is foreseeable that the

failure to communicate properly the results of the test would lead to the critical finding being overlooked. *See Zamarripa*, 526 S.W.3d at 460.

At the end of its second issue, ARUP makes two additional arguments. ARUP argues that there is no evidence that James's treating health care providers would have changed the treatment for James if they had been told of this critical finding. We disagree. The entire reason that the health care providers were taking cultures and testing was to identify the source of the infection and determine the proper treatment for James. Dr. Miller's report notes, "An organism needs to be found as a cause of the infection." Dr. Miller's causation opinion was sufficiently linked to the underlying facts. *See Van Ness*, 461 S.W.3d at 144.

And finally, ARUP contends that Dr. Miller's report lists three different earlier instances of negligence that could have resulted in identifying the mycobacterial infection. Whether there is a basis for other providers to be found negligent is not our focus here. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) ("Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers . . . ."); *Windrum v. Kareh*, 581 S.W.3d 761, 777-78 (Tex. 2019) (noting that injury may have more than one proximate cause, and defendant's negligence need not be sole or immediate cause but must be substantial factor in causing injury); *McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.) (noting that "[a]n expert may also establish causation by explaining a chain of events that begins with a defendant healthcare provider's negligence and ends in injury to the plaintiff."). The report is not required to prove the defendant's liability, only to provide notice of what conduct forms the basis of the plaintiff's claims. *See Longino v. Crosswhite*, 183 S.W.3d 913, 916 (Tex. App.—Texarkana 2006, no pet.). As this court is keenly aware, an expert witness's causation opinion can satisfy Chapter 74 even when there are conflicting statements as to the causal relationship. *See Van Ness*, 461 S.W.3d at 144.

Dr. Miller's supplemental expert report (1) informed ARUP of the specific conduct the Crawfords have called into question, and (2) provided a basis for the trial court to conclude that the claims have merit. *See Loasiga*, 379 S.W.3d at 260. We, therefore, hold that the trial court did not abuse its discretion by overruling ARUP's objection to Dr. Miller's report.

We overrule ARUP's second issue.

8

## DISPOSITION

Having overruled ARUP's first and second issues, we ***affirm*** the trial court's order overruling ARUP's objections to the Crawfords' expert report.

**BRIAN HOYLE**
Justice

Opinion delivered August 7, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**AUGUST 7, 2024**

**NO. 12-24-00079-CV**

**ARUP LABORATORIES, INC.,**
Appellant

V.

**JAMES H. CRAWFORD & RITA ANNETTE CRAWFORD,**
Appellee

Appeal from the 4th District Court
of Rusk County, Texas (Tr.Ct.No. 2022-296)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*